NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 76

No. 2016-062

In re A.S. and K.S., Juveniles

Supreme Court

On Appeal from
Superior Court, Franklin Unit,
Family Division

June Term, 2016

Thomas Carlson, J.

Michael Rose, St. Albans, for Appellant Mother.

James A. Hughes, Franklin County State's Attorney, St. Albans, for Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **PER CURIAM.** Mother appeals the family court's order adjudicating her children A.S. and K.S., born in September 2009 and October 2014, as children in need of care or supervision (CHINS). On appeal, mother argues that the court erred in looking exclusively at the facts that existed at the time the CHINS petition was filed and ignoring evidence of the changed circumstances at the time of the evidentiary hearing. We affirm.

¶ 2. The Department for Children and Families (DCF) was involved with the family for several years based on a history of substance abuse and mother's relationship with the father of K.S., who has a history of assaultive and abusive behavior.

¶ 3. The petition was filed in December 2014, alleging concerns about mother's inability to stay away from K.S.'s father, which presented a risk of harm to her and the children.

The petition alleged, among other things, that in November 2014, K.S.'s father physically and sexually assaulted mother. Father was charged for the physical assault, but at his arraignment, mother recanted her statement to police. The merits hearing was held in January 2016. The hearing focused on the merits of the petition and the facts at the time the petition was filed. The court found by a preponderance of the evidence that A.S. and K.S. were CHINS because the evidence of the events that occurred up until the time the petition was filed indicated that mother was unable to protect herself and provide proper care for her children.

¶ 4. On appeal, mother argues that the trial court erred in focusing on the facts as of the date the CHINS petition was filed and not also considering post-petition facts. Mother contends that the CHINS determination should be based on present circumstances.

¶ 5. We do not address mother's argument because it was not raised before the family court. To raise an objection a party must present the issue to the trial court in the first instance to allow that court "a fair opportunity to rule on it." In re D.C., 157 Vt. 659, 660, 613 A.2d 191, 191 (1991) (mem.). Arguments not raised below will not be addressed for the first time on appeal. In re C.H., 170 Vt. 603, 604, 749 A.2d 20, 22 (2000) (mem.). Here, not only did mother fail to argue below that the court should admit post-petition evidence, she joined father's objection to the State's attempt to admit evidence concerning events that occurred after the petition was filed.

¶ 6. Although this resolves the issues raised by mother in her appeal, we write additionally to highlight the long delay in this case because it is unfortunately not an aberration, but an example of what is occurring frequently in juvenile cases. To fully appreciate the delay a complete recitation of the facts is necessary. The petition alleging A.S. and K.S. were CHINS were filed on December 4, 2014. The State did not initially request an emergency care order. On December 17, 2014, the court held a preliminary hearing and granted conditional custody to mother. On January 13, 2015, the State filed for an emergency care order, which the court

2

granted, and custody was transferred to DCF. In an order the following day, the court indicated the need for a 1.5-hour hearing, presumably for a temporary care hearing. A hearing was set for February 5, 2015. K.S.'s father's counsel moved to continue the hearing for medical reasons. Mother opposed the continuance, arguing that the temporary care hearing was overdue and should have been scheduled within seventy-two hours of the January 13, 2015 removal. The hearing was continued and reset for March 11, 2015 because, as the docket entry on February 3, 2015 indicates, that was "the first date that all parties and court are available." Although a hearing took place on March 11, the resulting order indicated that the court was unable to take evidence that day because of a delayed start following other overlapping juvenile hearings. The court indicated it was reluctant to change placement without taking evidence and maintained the status quo of custody in DCF. A merits hearing was set for May 11, 2015. The matter did not proceed on that day, however, because the attorney for K.S.'s father did not appear, and three hours of hearing time was lost. The attorney was apparently at a hearing in the family division in another county. The parties, including father, agreed to continuing custody with DCF, but further agreed that the children could be placed with mother under certain conditions.

¶ 7. The matter was then scheduled for August 19, 2015. It is unclear from the record why the matter did not proceed on that date, but the transcript indicates that there was some question about whether K.S.'s father's attorney had a conflict of interest and would need to withdraw. In any event, the merits hearing did not take place, and the court issued a scheduling order the following day indicating a full day of hearing was required. Before this could be scheduled, mother filed motions to change the juvenile's school placement and to grant her conditional custody. A hearing on the motions was held, and on November 3, 2015, the court denied the motions. In its order, the court indicated that the merits hearing was set for January 8, 2016, but requested that the clerk determine whether an earlier hearing date was available. Apparently, no such rescheduling was possible because nothing further occurred until the merits

3

hearing was held January 8. The court promptly issued its decision on January 11, 2016, over a year after the petition was filed.

¶ 8. These facts indicate two major delays. The first was a failure to hold a timely temporary care hearing. Per statute, this should have occurred within seventy-two hours of the emergency care order. No evidentiary hearing was ever held, but the parties did reach a stipulation in May, five months after the children were removed from mother's custody in January 2015. The second delay was in holding the merits hearing, which is supposed to occur sixty days after the temporary care order is issued. It did not happen until January 2016, eight months after the agreement on temporary care and a full year from when the children were initially removed from mother's custody. These delays are delineated not because they warrant a reversal of the order on appeal. This Court has recognized that the statute's aim is to protect children and that the time limits in the statute "are directory and not jurisdictional." In re M.B., 158 Vt. 63, 67, 605 A.2d 515, 517 (1992). Rather, the delay in this case highlights the issue and the systemic problems that have caused it.

¶ 9. The statute outlines the process and timelines to be followed when a petition is filed alleging a child is CHINS. The CHINS petition may be filed in tandem with a request to immediately transfer custody to DCF if continued residence in the home is "contrary to the child's welfare." 33 V.S.A. § 5305(a) (emergency care order); id. § 5308(a) (temporary care order). An emergency petition may be granted ex parte, but a temporary care hearing must then be held within seventy-two hours. Id. § 5307(a). At the temporary care hearing, DCF must present certain information, and all parties have a right to present evidence. Id. § 5307(e), (f). If a CHINS petition is not preceded by a request for a temporary care order, a preliminary hearing must be held within fifteen days of the petition's filing. Id. § 5311(a). The statute provides that a pretrial hearing should be held within fifteen days of the temporary care or preliminary hearing. Further, if the child is removed from the custodial parent's legal custody, the merits hearing

4

should be "held and merits adjudicated no later than 60 days from the date the temporary care order is issued, except for good cause shown." 33 V.S.A. § 5313(b).

¶ 10. These time expectations are extremely important in juvenile cases. Family units are a fundamental group of society. See Paquette v. Paquette, 146 Vt. 83, 92, 499 A.2d 23, 29-30 (1985) ("Both the right of a parent to custody and the liberty interest of parents and children to relate to one another in the context of the family, free from governmental interference, are fundamental rights protected by the due process clause of the Fourteenth Amendment to the United States Constitution."). When the state intervenes with families and makes the claim that the child or the children are abused and neglected, the process that follows must seasonably proceed while the CHINS is pending because the parents' rights are "temporarily curtailed." In re B.R., 2014 VT 37, ¶ 13, 196 Vt. 304, 97 A.3d 867 (quotation omitted) (explaining that focus of CHINS proceeding is child's welfare and State's interest in safety and welfare of child is balanced against parent's interest in maintaining family integrity). The "safety and permanency" of the child is the "paramount concern." In re A.G., 2004 VT 125, ¶ 17, 178 Vt. 7, 868 A.2d 692. Children are obvious objects of the state's concern when abuse or neglect is claimed, and a parent's right to "the care, custody, and control of one's children, although fundamental, is not absolute and may be overcome by the State's interest, under the doctrine of parens patriae, in ensuring the protection and care of its juveniles." In re C.L., 143 Vt. 554, 558, 468 A.2d 563, 565 (1983). When abuse is claimed there are procedures required to be followed under the law designed to protect the rights of the parties, but any consequent delays are likely to be disruptive to the child and the child's stability. Particular attention to the timeliness of the proceedings required by the statutes incidental to state intervention is important to avoid the potential of "sidelining" a child's rights and interests. Although the statutory timelines are not mandatory, they serve an important purpose and the failure to achieve timely resolution, as in this case, is a result that is unsatisfying and should not be accepted as the status quo.

5

¶ 11. Unfortunately, due to the dramatic increase in the juvenile docket and a shortage of resources including judges, lawyers, guardians ad litem (GALs), and courtroom space, timely resolution was sacrificed in this case to provide the required process. Our impression from the many appeals filed here is that the statutory time deadlines have become fictitious "paper tigers." The rapid expansion of child abuse and neglect and termination of parental rights (TPR) cases due to, at least in part, the recent increases in drug addiction weighs on the justice system. Abuse and neglect/TPR cases are frequently complex involving many parties and presenting difficult issues of addiction, co-occurring untreated mental-health problems, incarceration, homelessness and poverty, which all critically impact the welfare of children. Despite recent efforts made by the executive and legislative branches to alleviate some of the problems, for which we are grateful, every element of the juvenile justice system intended to address these concerns remains stretched thin. There is a shortage of GALs, who generously contribute their time. There is also a shortage of lawyers to represent parents and children in these cases.* The scheduling problem has been aggravated by the sheer volume of the juvenile caseload in the courts. Courtroom space and judge time is at a premium.

¶ 12. This is a system under great stress, and all branches of government must continue to work together if the situation is to be alleviated. The statute on juvenile judicial proceedings lists among its purposes "ensur[ing] that safety and timely permanency for children are the paramount concerns in the administration and conduct of proceedings." 33 V.S.A. § 5101(a)(4) (emphasis added). The statute also states, however, that it should be construed to ensure that the parties are provided "a fair hearing, and that their constitutional and other legal rights are

---

* The Defender General Act provides representation to children, parents, and custodians who cannot afford a lawyer (most cases). Anecdotally, the Defender General has difficulty finding enough attorneys to do the work in some counties. Contract attorneys typically are used in these multi-party cases and lawyers work for a flat rate of pay. The lawyers who sign up are not employees of the state and some sign contracts in multiple counties setting the stage for scheduling problems as we see in the case before us here.

6

recognized and enforced." Id. § 5101(a)(6). These two important goals—the efficient and timely resolution of cases and the provision of fair process—must be carefully balanced to ensure that the needs of both children and parents are met. The facts of this case demonstrate that the necessary balance is not being achieved and several themes are evident.

¶ 13. First, the initial hearing and the hearing on the emergency petition once it was filed were both scheduled and adjudicated in a very timely manner. The priority given to these initial and emergency filings is obviously necessary since the safety of children is implicated.

¶ 14. Second, delays occurred due to the difficulty of finding time when all of the many parties and their lawyers were available. For example, a temporary care hearing requires the presence of the child's custodial parent or guardian, the child's GAL, the child's attorney, the attorneys for both parents, DCF, and the state's attorney. 33 V.S.A. § 5307(c). In addition, at a contested merits adjudication, all parties have the right to present evidence. Id. § 5315(c). Because the two children subject to this proceeding have different fathers, the following individuals were entered as parties: the juveniles and their attorney, the state's attorney, DCF, mother and her attorney, the two fathers and their two different attorneys, and the children's GAL. Any evidentiary hearing required the presence of five lawyers, a DCF representative, the GAL, and the three parents; a total of ten individuals in all. This is not unusual. And this does not even include lay witnesses or experts that may be necessary to resolve contested factual matters. Finding time when all of these people are available is exceedingly challenging especially because the lawyers assigned to represent parents and juveniles in these cases may at the same time be assigned to clients in several juvenile proceedings in different counties. An added complication here, and one that arises in other cases, was that one father was incarcerated and required transport to hearings.

¶ 15. Third, even if all of the attorneys and parties are available, courtroom and judge time are in high demand and may not be readily available. Due to the need for participation by

several different parties, an evidentiary hearing often requires large blocks of court time. With dockets that are overloaded with juvenile matters, and with emergency matters taking priority for judge time, these large blocks of time can be created only by scheduling months in advance. Here, for example, to schedule the one-day hearing, the court had to set a date two months out.

¶ 16. Fourth, even if a time can be successfully found, the interplay with other cases on a heavy docket may cause delays once scheduled, as happened in this case.

¶ 17. No one source is to blame for the delay in this case. The juvenile docket in Franklin County, and many other counties too, is overwhelmed with abuse and neglect cases. Indeed, many charged with responsibility in the justice system have undertaken tremendous effort to address a caseload that involves the most tender, difficult and complex issues for which they deserve great credit. And, in this specific case it is evident the judge, staff, GAL, DCF, and lawyers worked together and diligently to try to meet the requirements of the law. Despite these efforts, however, the factors influencing delay were systemic. To restore balance, we must be open to experimenting with new methods. The Legislature has responded to the overloaded dockets, which are not evenly distributed throughout the state, by passing a bill allowing termination-of-parental-rights cases to be heard by a regional venue court comprised of four counties. See H. 869, 2015-2016 Gen. Assem., Bien. Sess. (Vt. 2016), § 4. More or dedicated lawyers, judges, and staff working in a state-wide juvenile docket is another idea to alleviate delays in these cases. Allowing the appearance of witnesses or lawyers by telephone or video conference would also help. In addition, more courtroom space and judge time are required. The Legislature has made recent efforts to address some of these issues by authorizing the creation of an additional superior court judge position, as well as additional positions in the Office of the Defender General and the Department of State's Attorneys. See 2015, No 68 (Adj. Sess.), § 60a; H. 875, 2015-2016 Gen. Assem., Bien Sess. (Vt. 2016), § E.100. These measures

are a start, but continued efforts must be made to provide the required process in a timely manner for both children and parents.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice