*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-188

OCTOBER TERM, 2016

In re R.L., Juvenile

}    APPEALED FROM:
}
}    Superior Court, Franklin Unit,
}    Family Division
}
}    DOCKET NO. 164-10-14 Frjv

Trial Judge: Alison S. Arms

In the above-entitled cause, the Clerk will enter:

Mother and father separately appeal termination of their parental rights to their son R.L., born in July 2014. On appeal, mother argues that the court failed to engage in a forward-looking analysis and abdicated its responsibility to review the case plan. Father argues that the evidence does not support the court's findings that termination was in the child's best interests. We affirm.

R.L. is parents' third child. Parents stipulated that their older two children, K.L. and S.L., were children in need of care or supervision (CHINS) in December 2013 due to parents' substance abuse. Shortly after R.L.'s birth, on July 22, 2014, the State filed a petition alleging that R.L. was CHINS. The court granted custody to the Department for Children and Families (DCF), and R.L. was placed with his mother at the Lund home. Due to safety concerns by Lund staff, R.L. was discharged from Lund on August 12, 2014. He was placed with a foster mother. That CHINS petition was dismissed on October 3, 2014, and R.L. was returned to his parents that same day. On October 16, 2014, this CHINS petition was filed, and custody was again transferred to DCF. DCF placed him back with his foster mother, where he has since remained.

In March 2015, the court adjudicated R.L. as CHINS. The court concluded that mother had demonstrated an inability to care for R.L. while at Lund, finding among other things that mother did not follow diaper change instructions, R.L. developed a diaper rash so severe that it bled and mother sought treatment only after staff intervened, mother's sedation from her methadone impacted her ability to care for R.L. in that she would not wake at night to tend to R.L. and would pass out on occasion, mother had difficulty meeting expectations and would leave the property without notifying staff, and mother did not engage in discharge planning. Further the court found that within a week of returning to mother's care in October 2014, R.L. experienced a significant weight loss of fourteen ounces, which was due to not getting enough calories. Father and mother were both on a methadone maintenance program, but father continued to use nonprescribed drugs. Mother allowed father to be present with R.L. despite his ongoing drug use.

In April 2015, mother applied for a relief-from-abuse order against father. It described six years of emotional and physical abuse by father, including several incidents of violent physical abuse. Mother withdrew the application three days later.

DCF filed a case plan with a goal of termination and adoption, and the parents contested the plan. Despite the termination recommendation, the plan contained recommended services for parents and was similar to the prior case plans for parents' older children. The court initially scheduled a contested disposition hearing for September 2015, but the matter was continued because father's attorney had withdrawn from the case and the case plan called for termination, but no petition had yet been filed. In October 2015, DCF filed a petition to terminate parents' rights. The case plan was never formally approved by the court. A hearing was held over three days in January and March 2016. Both parents testified. Father denied that his inability to care for R.L. was due to his drug use and said there was no reason R.L. should have been taken. Mother also said that R.L. was taken based on false allegations. At trial, she conceded some statements in the RFA affidavit and denied others. Father denied any abuse.

In May 2016, the court issued a written order terminating parental rights. The court credited the statements in mother's RFA affidavit and found that there was domestic violence in the home and that it posed an ongoing risk to mother and any children that would be placed in the home. The court analyzed the child's best interests and found that parents would not be able to parent R.L. within a reasonable period of time. The court explained that despite participation in services, parents had failed to make meaningful changes necessary to parent R.L. Father denied that parents' drugs use impacted their parenting and denied that there was domestic violence in the household. He did not make progress in his parenting skills and was unable to safely parent R.L. The court similarly found that mother minimized the severity of domestic violence in the household and denied that drug use impacted her parenting. The court found that mother had been unable to safely parent R.L. during the time period she was at Lund and the two weeks she cared for R.L. in October 2014 and had not made the meaningful changes necessary to safely parent. She had difficulty recognizing the child's needs and placing his needs ahead of her own. R.L. had a strong bond with his foster mother and foster brother and had adjusted well to his home, school, and community. Thus, the court concluded that termination was in R.L.'s best interests. Both parents appeal.

The family court may terminate parental rights at initial disposition if the court finds by clear and convincing evidence that termination is in the child's best interests. In re J.T., 166 Vt. 173, 177, 179 (1997). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

Mother argues that the court failed to engage in a forward-looking analysis with respect to the TPR petition, and that the court erred in failing to accept or reject DCF's proposed case plan prior to termination at initial disposition. Father joins these arguments, and also challenges the sufficiency of the State's evidence and, in particular, argues that the trial court improperly relied on testimony from a caseworker that mostly related to a prior case involving the parents' older children.

We begin with mother's appeal, which father joins. Mother first argues that the court failed to engage in a forward-looking analysis. In assessing whether a parent will be able to parent within a reasonable period of time, the court must focus on a parent's prospective ability, but "past events are relevant in this analysis." In re D.S., 2014 VT 38, ¶ 22, 196 Vt. 325. The reasonableness of

2

the time period must be measured from the child's perspective, In re B.M., 165 Vt. 331, 337 (1996), and may take account of the child's young age or special needs, In re J.S., 168 Vt. 572, 574 (1998) (mem.). Here, the court findings reflect that the court properly focused on parents' prospective ability to parent. The court looked at mother's past demonstration of her ability to parent, including the time period she was with R.L. at Lund and the time in October when R.L. was returned to her care. The court then considered whether mother had made changes since then to demonstrate that she would be able to parent within a reasonable period of time. The court found that neither parent had made the necessary changes to demonstrate that they could safely parent R.L., despite the services provided. The court credited the testimony of the family time coach and parent educator that neither parent had made any progress in parenting skills. Further, parents failed to acknowledge the impact of their drug use and the domestic violence in the home on their ability to parent. Father continued to deny the impact of his drug use, denied domestic violence in the home, and failed to make progress in parent education. Mother similarly denied the impact of her drug use and minimized the severity of the domestic violence. Given this lack of progress and considering R.L.'s young age, the evidence supports the court's conclusion that parents would not be able to parent within a reasonable period of time.

Mother also argues that the court erred in failing to accept or reject DCF's case plan. At the time, the statute required DCF to file a disposition case plan with the family court twenty-eight days following a CHINS adjudication.[*] 33 V.S.A. § 5316. This case plan is considered by the court at the disposition hearing and, depending on the outcome of the disposition proceeding, evaluated by the court to determine if it is "designed to achieve the permanency goal." Id. § 5318(b). Here, the court fully complied with the statute. The court did not consider the case plan prior to the termination hearing because termination was sought at the initial disposition. Further, because the outcome of disposition was termination of parental rights, the court was not required to either accept or reject the case plan. Id. For these reasons, we conclude that the court did not err in granting the termination petition at initial disposition without first accepting or rejecting the case plan.

Mother contends that the delay in holding a disposition hearing prejudiced her because the court had not reviewed the plan of services and expectations for mother. However, the court did not base its termination on either parent's failure to comply with the expectations in the not-yet-approved plan, but instead properly focused on the best-interests analysis and concluded that termination at initial disposition was in the child's best interests. The services recommended and offered by DCF were relevant insofar as the court's conclusion that the parents were not reasonably likely to be able to assume parental responsibilities in a reasonable time from the perspective of the child took into account the efforts already made to help them do so. In addition, although the disposition hearing did not take place within the thirty-five-day time frame set by statute, id. § 5317(a), the timeline is directory not mandatory. In re A.S., 2016 VT 76, ¶ 8. The critical question when termination is sought at the initial disposition proceeding is whether there is "clear and convincing evidence that termination is in the child's best interests." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29. Here, the court made extensive findings on R.L.'s best interests and those findings support the court's conclusion that termination was in R.L.'s best interests.

---

[*] 13 V.S.A. § 5316 was recently amended to allow seven days to file a disposition case plan. 2015, No. 153 (Adj. Sess.), § 30.

Next, we turn to father's argument. Father claims that the court abused its discretion in crediting the testimony of the first DCF caseworker over the testimony of other professionals who worked with father, including the family time coach and parent educator. He suggests that the caseworker was biased, and argues that much of her testimony related to his conduct in connection with his older children addressed in a different proceeding.

We conclude there was no error. "[I]t is the exclusive role of the family court to weigh the evidence and assess the credibility of witnesses." In re M.L., 2010 VT 5, ¶ 29, 187 Vt. 291. Therefore, to the extent there was a conflict between the evidence presented by different witnesses, the court did not err in crediting the account of the DCF caseworker over that of other witnesses.

Further, while some of the court's findings on father's lack of ability to parent R.L. were supported by the testimony of the first DCF caseworker, many of the findings concerning father's lack of readiness to parent were independently supported by other sources, including the testimony of the individuals father describes as more credible. The family time coach testified that father missed a quarter of family time visits, and that neither parent had made progress during the time she provided coaching. The parent educator also testified that father's attendance was inconsistent and that his parenting skill level stayed the same from beginning to end. Further, the court's findings that father failed to appreciate how his drug use and domestic violence had impacted his parenting were supported by father's own testimony. Thus, the court's findings that father is unable to safely parent R.L. and will not be able to do so within a reasonable period of time are well supported by the evidence.

For these reasons, we affirm the trial court's decision.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4