NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 26

No. 2016-248

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Criminal Division |
| | |
| Ashley Nutbrown-Covey | January Term, 2017 |

Kevin W. Griffin, J. (motion to dismiss);
Kirstin K. Schoonover, J. (motion for permission to appeal)

Rory T. Thibault, Washington County Chief Deputy State's Attorney, Barre, for
 Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **EATON, J.** This case presents the question whether the doctrine of issue preclusion bars the State from prosecuting defendant for alleged abuse of one child, A.N., after the family court, in an earlier child-in-need-of-supervision (CHINS) proceeding involving a different child, J.N., found that there was insufficient evidence to adjudicate J.N. CHINS for being without proper parental care or subsistence. We hold that, given the facts of this case, the prosecution is not barred by issue preclusion. Accordingly, we affirm the trial court's denial of defendant's motion to dismiss.

¶ 2. The facts relevant to this criminal case and the related family court proceeding involve an incident that occurred in the fall of 2011. Defendant is the mother of three children:

J.N., born in 2013; A.N., born in 2008; and A.C., born in 2004. In August 2011, defendant and A.N.'s father took A.N.—then three years old—to the emergency room for an injury to A.N.'s leg. A.N. was examined by a physician, whose treating records indicate that although it was obvious that A.N. was injured, there were no deformities or external bruising to A.N.'s leg. The physician ordered X-ray examinations, which showed that A.N. was suffering from a spiral fracture of the left leg, meaning that A.N.'s leg had been subjected to significant torque. Although the physician was a mandated reporter, he did not notify the Department for Children and Families (DCF) of A.N.'s injury because nothing indicated that A.N. had been injured by defendant or any other adult. Neither DCF nor the State took any action until 2014.

¶ 3.    On July 9, 2014, the State filed an information against defendant alleging one felony count (Count 1) of first degree aggravated domestic assault in violation of 13 V.S.A. § 1043(a)(1) and three misdemeanor counts (Counts 2 through 4) of child cruelty in violation of 13 V.S.A. § 1304(a). Defendant entered pleas of not guilty to all charges at her July 10, 2014, arraignment, and the State later dismissed Count 3. Counts 2 and 4 involve alleged abuse of A.C., while the factual basis for Count 1 involves the incident from August 2011 in which defendant and A.N.'s father brought A.N. to the emergency room with a fractured leg. None of the criminal charges involve alleged abuse of J.N.

¶ 4.    On July 16, 2014, when J.N. was ten months old, the State filed a petition in the family division alleging that J.N. was without proper parental care in violation of 33 V.S.A. § 5102(3)(B). According to that statute, a child is CHINS if he or she "is without parental care or subsistence, education, medical or other care necessary for his or her well-being." The State's theory at the CHINS proceeding was that defendant posed a risk of harm to J.N. for various reasons, including: her alleged prior abuse of A.N. and A.C.; her behavior towards J.N.'s putative father during their contentious breakup, which involved, among other things, allegations that defendant engaged in elaborate schemes to falsely accuse J.N.'s putative father of domestic abuse;

2

allegations that she verbally threatened J.N.'s putative father and the children; and her alleged propensity to leave J.N. in the care of questionable caregivers.

¶ 5.     J.N. was placed in foster care pending the outcome of the CHINS proceeding.  The family court held a merits hearing on the CHINS petition on December 11, 2014, and took testimony from, among others, two medical doctors, including the emergency room physician who treated A.N. in August 2011, the investigating detective, A.N.'s father, and a ten-year-old child, A.B., who was present when A.N.'s leg was injured.  After hearing the testimony, the court found that there was "no evidence at all" related to "[defendant]'s care during [J.N.'s] life that in any way, shape, or form" suggested that defendant "presented a risk of abuse or neglect."  The court did not, however, make specific findings about the alleged incidents of abuse of A.C. or A.N.[1]  The court dismissed the CHINS petition and returned J.N. to defendant's custody.  The State did not appeal.

¶ 6.     On September 29, 2015, defendant filed a motion to dismiss the criminal charges against her for lack of a prima facie case pursuant to Vermont Rule of Criminal Procedure 12(d) and on the ground that collateral estoppel barred the State from relitigating the question of whether she abused A.N or A.C.  The court held a hearing on May 2, 2015, where the State dismissed Count 3—a misdemeanor child abuse charge involving A.C.—and defendant withdrew her Rule 12(d) motions on Count 1, the assault charge concerning A.N, and Counts 2 and 4, the abuse charges concerning A.C.  After hearing argument on the collateral estoppel issue, the trial court issued a written decision on June 15, 2016, finding that collateral estoppel did not bar the State from trying defendant for aggravated domestic assault of A.N. and criminal child abuse of A.C.,

---

[1] For the sake of clarity, we refer throughout this opinion to the criminal allegations against defendant collectively as child abuse, although defendant is accused of child cruelty against A.C. and aggravated domestic assault of A.N.

3

despite the family court's dismissal of the CHINS petition that included the same factual allegations. We granted an interlocutory appeal of that decision.

¶ 7. The question before this Court is whether collateral estoppel bars the State from pursuing criminal charges against defendant for child abuse of A.N. and A.C. after the family court dismissed the CHINS petition concerning J.N. that included the same allegations. Because we conclude that the question of defendant's alleged abuse of A.N. and A.C. was never fully resolved in the CHINS proceeding and because the State did not have a fair opportunity to fully litigate that issue, we hold that the doctrine of collateral estoppel does not apply and the State is not barred from pursuing criminal charges against defendant.

¶ 8. The elements of collateral estoppel, also known as issue preclusion are:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). As we have noted before, cases of cross-over estoppel—where a party to a civil action claims that an issue decided in the civil case is preclusive in a subsequent criminal case—are rare, but so long as the elements of issue preclusion are satisfied, we see no barrier to the application of the doctrine in cross-over cases. Cf. State v. Stearns, 159 Vt. 266, 268, 617 A.2d 140, 141 (1992) (holding that issue preclusion did not apply in case in which defendant sought to bar prosecution in criminal driving under the influence (DUI) refusal case following finding in civil suspension hearing that defendant had not refused); State v. Pollander, 167 Vt. 301, 306, 706 A.2d 1359, 1361 (1997) (holding that issue preclusion did not apply in civil license suspension case following defendant's acquittal in criminal DUI case because "defendant has not established that determination of his

4

BAC was necessary and essential to the criminal verdict, as required under the second Trepanier factor").

¶ 9. The State here concedes that the first factor—preclusion is asserted against one who was a party or in privity with a party in the earlier action—is satisfied because defendant is attempting to assert preclusion against the State in both cases. In light of the State's concession, we do not address this factor further.

¶ 10. The second factor asks whether the issue in the present action was resolved by a final judgment on the merits in the earlier proceeding, Pollander, 167 Vt. at 305, 706 A.2d at 1361, while the third factor asks whether the issue is the same in both proceedings. We address these factors together.

¶ 11. As we have previously noted, "preclusion appl[ies] only to issues necessarily and essentially determined in a prior action." Id. (quotation omitted); see also Am. Trucking Ass'ns v. Conway, 152 Vt. 363, 369, 566 A.2d 1323, 1327 (1989) (explaining that issue preclusion is appropriate only "where that issue was necessary to the resolution of the [earlier] action"); People v. Gates, 452 N.W.2d 627, 631 (Mich. 1990) (reasoning, in case where defendant asserted issue preclusion in criminal case based on prior child-protective proceeding in probate court, that "[i]n order for collateral estoppel to operate as a bar to a subsequent prosecution, the jury in the earlier probate proceeding must necessarily have determined that defendant was not guilty of the criminal sexual conduct charged in the prosecutor's complaint"). Ascertaining whether two issues are the same and whether one issue was necessarily determined "involves a balancing of important interests: on the one hand, a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute." Restatement (Second) of Judgments § 27 cmt. c. (1982); see also Berlin Convalescent Center, Inc. v. Stoneman, 159 Vt. 53, 60, 615 A.2d 141, 146 (1992) (citing § 27 of Restatement of Judgments). Accordingly, several considerations come into play for a court weighing the second and third Trepanier factors,

5

including: whether there is substantial overlap in evidence between the two issues; whether any new evidence involves application of a different rule of law; whether pretrial preparation and discovery related to the first matter could have reasonably been expected to embrace the matter at issue in the second; and how closely related the two claims are to each other. Restatement (Second) of Judgments § 27 cmt. c.

¶ 12.    Defendant contends that the evidence the State presented at the CHINS proceeding for J.N., which included testimony about alleged abuse of A.N. and A.C., is the same evidence that forms the basis for the State's criminal case against her for aggravated domestic assault of A.N. and child cruelty of A.C.  Additionally, defendant argues that because the family court found that there was insufficient evidence to adjudicate J.N. CHINS for neglect under the preponderance-of-the-evidence standard, and because the State attempted to present overlapping evidence in the CHINS proceeding and the subsequent criminal case, the issues in the two proceedings are the same.  Citing language from State v. Dann, 167 Vt. 119, 125, 702 A.2d 105, 109 (1997),[2] defendant then argues that because the factual allegations in the two cases are similar, and because the family

---

[2]  The passage in Dann that defendant cites—"For the purposes of claim preclusion, two causes of action are the same if they can be supported by the same evidence."—involves claim preclusion, not issue preclusion.  167 Vt. at 125, 702 A.2d at 109.  While issue preclusion and claim preclusion are related concepts, they are not identical, and different factors determine when an issue, rather than a complete claim, has preclusive effect.  See id. at 124, 702 A.2d at 109. Specifically, claim preclusion, also called res judicata, applies only when "there is a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical to those before the court in this case.  It bars claims that were litigated and those which should have been raised in the prior litigation." Longariello v. Windham Southwest Supervisory Union, 165 Vt. 573, 574, 679 A.2d 337, 338 (1996) (mem.) (citation omitted); see also New Hampshire v. Maine, 532 U.S. 742, 748 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.").  Issue preclusion, also known as collateral estoppel, "prevents a party from relitigating an issue that has necessarily been decided in a previous action," and therefore serves to bar relitigation of specific questions of fact or law that were essential to the prior judgment, whether those issues arise in the same or a different claim.  Cold Springs Farm Dev., Inc. v. Ball, 163 Vt. 466, 468, 661 A.2d 89, 91 (1995); see also New Hampshire v. Maine, 532 U.S. at 748.

court reached a final decision on the merits in the CHINS proceeding, the second factor and third factors are satisfied.

¶ 13.   However, commonality of evidence alone is insufficient for issue preclusion; the actual factual or legal question presented in the first action must be the same as the question presented in the second.  Cf. Dann, 167 Vt. at 127, 702 A.2d at 110.  Additionally, while the evidence that the State proffered in the CHINS proceeding may be similar to the evidence that it intends to use in the criminal case, the family court never made a specific finding about child abuse in the CHINS proceeding.  The reason the court did not make a specific finding about child abuse likely flows from the fact that the State's CHINS case for J.N. was premised on neglect (CHINS-B), not on abuse (CHINS-A).  As a result, pretrial preparation and discovery related to neglect of J.N. could not have been reasonably expected to embrace the question of abuse of A.N. or A.C. because J.N. was born in 2013, and the alleged abuse that is the subject of the criminal charges against defendant took place in 2011 and 2012.  Most of the pretrial investigation that the State might have conducted for the CHINS proceeding would have related to defendant's relationship with J.N. from 2013 onward rather than with defendant's other children in the years prior to J.N.'s birth.  Thus, even if the CHINS court had found, for example, that defendant abused A.N. or A.C. before J.N. was born, it might still have found that J.N. was not CHINS-B for lack of proper parental care.  That fact demonstrates that while there was a final determination on the merits of the CHINS-B petition, the question of defendant's abuse of A.N. and A.C. was not necessary to the CHINS neglect petition concerning J.N.  See Pollander, 167 Vt. at 305, 706 A.2d at 1361.

¶ 14.   In a similar vein, the kinds of proceedings at issue here—a CHINS proceeding in the family division and a criminal case—require the courts to consider and apply different rules of law.  See Restatement (Second) of Judgments § 27 cmt. c. (explaining that determining whether issue was necessary to first judgment requires court to consider whether any new evidence involves application of different rule of law).  A criminal case is concerned with a defendant's conduct in

7

some specified instance and therefore requires the State to prove particular elements of a crime at the time and place alleged, while a CHINS case is concerned with the wellbeing of the child in question and therefore considers the course of the parent-child relationship. See In re J.J.P., 168 Vt. 143, 147, 719 A.2d 394, 397 (1998) ("[W]e conclude that a CHINS order, where the child's interests are paramount, is not analogous to a criminal conviction."). Put differently, a criminal case seeks to identify any misconduct on the part of a defendant; a CHINS case seeks to identify how to best protect the child, regardless of whether or not the child's parent has engaged in misconduct.

¶ 15. For example, in this case the question before the CHINS court was whether the State presented sufficient evidence to establish that J.N. was "without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being," 33 V.S.A. § 5102(3)(B), whereas the questions before the criminal court in this case are whether the State can establish that defendant "attempt[ed] to cause or willfully or recklessly cause[d] serious bodily injury to [A.N.]," 13 V.S.A. § 1043(a)(1), and whether the State can establish that defendant "willfully assault[ed], ill treat[ed], neglect[ed] or abandon[ed] or expose[d] [A.C.], or cause[d] or procure[d] [A.C.] to be assaulted, ill-treated, neglected, abandoned or exposed." Id. § 1304(a). Thus, in the CHINS proceeding involving J.N., the fact of A.N.'s broken leg was relevant, regardless of how the leg was broken, because the State's theory of the CHINS case was that defendant was not capable of providing proper parental care. In the criminal case, however, the fact of A.N.'s broken leg is relevant only if the State can establish that defendant recklessly caused the broken leg. 13 V.S.A. § 1043(a)(1). The issues before the two courts were not the same and the question of defendant abusing A.N. and A.C. was never finally litigated in the CHINS court. See Restatement (Second) of Judgments § 27 cmt. c.

¶ 16. Consistent with the decisions of other courts that have considered this question, we conclude that this case does not satisfy the second or third Trepanier factor and hold that the civil

8

CHINS case, in this instance, has no preclusive effect in defendant's pending criminal case. See, e.g., Gregory v. Commonwealth, 610 S.W.2d 598 (Ky. 1980) (no issue preclusion in child sexual abuse case where prior family court decision found that "best interests of these children would [not] be served by committing them to the Department for Human Resources" because family court's findings "were not essential to its decision"); People v. Roselle, 193 A.D.2d 56 (N.Y. App. Div. 1993) (no issue preclusive effect in criminal child abuse case where prior family court decision found that defendant abused but did not neglect subject child). However, even assuming arguendo that this case would satisfy the second and third Trepanier factors, we would still hold that issue preclusion does not apply because under the facts of this case, the State did not have a full and fair opportunity to litigate the issues of aggravated domestic assault of A.N. and child cruelty of A.C. in the CHINS proceeding. Thus, in order to clarify Trepanier's application in cross-over estoppel cases, we address the fourth factor.

¶ 17. The fourth Trepanier factor asks whether there was a full and fair opportunity to litigate the issue in the earlier action. Courts applying this factor must take into account, among other considerations: the parties' incentives to litigate; the foreseeability of future litigation; the legal standards and burdens involved in the two actions; the procedural tools available in each forum; and the possibility of inconsistent determinations of the same issue in separate prior cases. See Dunn, 167 Vt. at 127, 702 A.2d at 110 (quoting Trepanier, 155 Vt. at 266, 583 A.2d at 587)).

¶ 18. There are significant procedural differences between the CHINS and criminal proceedings at issue here. Section 5313(b) of Title 33, which governs the timing for CHINS proceedings, provides that "a merits hearing shall be held and merits adjudicated no later than 60 days from the date the temporary care order is issued," while the statute of limitations for all of the criminal charges the State alleges against defendant is three years. 13 V.S.A. § 4501(e). Although the timeline goals for adjudicating the merits of a CHINS petition are not always met, the need to achieve permanency without undue delay for a child is paramount in our juvenile

system. See 33 V.S.A. § 5101(a)(4) ("The juvenile judicial proceedings chapters shall be construed . . . to ensure that safety and timely permanency for children are the paramount concerns."); In re A.S. & K.S., 2016 VT 76, __ Vt. __, ¶¶ 9-10,150 A.3d 197 (emphasizing importance of timely adjudication in CHINS cases). The short time to hold a merits hearing after the filing of the CHINS petition—which stems from the necessity for prompt resolution in a situation where a child's custody is potentially being litigated—means that in a CHINS proceeding, the State may have a more limited opportunity, compared to a criminal case, to conduct discovery, to prepare witnesses, and to otherwise ready the case for a merits hearing. The difference is especially important in a case such as this one, where at least one issue that is likely to predominate in the criminal trial—how A.N.'s leg was broken—will depend on the testimony of competing expert witnesses.

¶ 19. To give preclusive effect to a CHINS proceeding in a later criminal proceeding might result in CHINS cases being delayed pre-merits while the State develops evidence in an attempt to avoid the possibility that an adverse CHINS result would foreclose any related criminal charges. A delay in reaching the merits of a CHINS petition would necessarily further delay the adjudication of a child's custody, and "[w]hen abuse is claimed . . . any consequent delays are likely to be disruptive to the child and the child's stability." In re A.S. & K.S., 2016 VT 76, ¶ 10. Such a result would further undermine the goal in the juvenile docket of "efficient and timely resolution of cases." Id. ¶ 12.

¶ 20. Additionally, the State has an interest in having a jury rather than a judge make determinations about the credibility of witnesses, the factual basis for the criminal prosecution, and the weight to give to proffered evidence. See Singer v. United States, 380 U.S. 24, 36 (1965) (concluding that Government has legitimate interest as litigant in trial by jury, except where defendant would be prejudiced by jury trial). Because CHINS proceedings are statutorily conducted by a judge, not a jury, giving preclusive effect to findings of the CHINS court would

10

prevent the government from having a jury decide important issues in the criminal case. This procedural difference weighs in favor of not giving preclusive effect to the CHINS court's findings.[3]

¶ 21. Second, the State has different incentives to litigate a CHINS proceeding and a criminal prosecution. The nature of a CHINS proceeding, which is fundamentally concerned with the child's welfare and with ensuring that the judicial process identifies the custody circumstances that are in the child's best interests, means that the State's incentive is to focus on issues that bear on the child's best interests and not solely on the behavior of the custodial parent. Third, there is no possibility of inconsistent verdicts in this case because it is possible that J.N. was not lacking sufficient parental care for CHINS purposes, even if J.N.'s siblings were criminally abused before J.N. was born. This conclusion is consistent with the reasoning of other courts that have considered this issue. See, e.g., People v. Percifull, 12 Cal. Rptr. 2d 331, 334-35 (Ct. App. Cal. 1992) ("One critically important element of the criminal trial process is the exercise of the district attorney's sound discretion as to whether prosecution is or is not warranted in any particular case."); People v. Moreno, 744 N.E.2d 906, 911 (Ill. 2001) (collecting cases and endorsing conclusion in Percifull that there would be no issue preclusion in child abuse case following juvenile abuse and neglect

---

[3] Public access is an additional procedural difference between a CHINS proceeding and a criminal proceeding, and although that difference may not prejudice either the State or defendant in this case, it is worth noting because it implicates important interests of third parties. Specifically, the public and the press have a protected First Amendment right of access to most stages of a criminal trial, but public access to CHINS proceedings is statutorily restricted. Compare State v. Tallman, 148 Vt. 465, 469-71, 537 A.2d 422, 425-26 (1987) (describing First Amendment right of press and public to access criminal proceedings where proceeding was historically open and where public access played significant positive role in function of process in question), with V.R.F.P. 2(f)(1) ("When the court determines that a person is a proper or necessary party pursuant to 33 V.S.A. § 5102(22)(F), but is not a party specifically listed in that section, the court may place limits on that person's participation . . . ."). When, as happened in this case, a party uses confidential information from a CHINS proceeding in a criminal case, that sensitive information about a juvenile—in this case, a child who would not have otherwise been involved in the criminal proceedings—may become a part of the public record. On the other hand, if that information is not made part of the public record, the public and the press are not able to play their protected role in ensuring just and orderly judicial proceedings.

11

proceeding in which every factual finding was identical to those at issue in criminal case because "policy considerations required that prosecution be allowed," and in particular because "the criminal trial process [i]s the exclusive forum for determining guilt or innocence"); State v. Hameed, No. M2009-00152-CCA-R9-CD, 2010 WL 3582485, at *11 (Ct. App. Tenn. Sept. 15, 2010) (no issue preclusion in child abuse case where prior family court ruling found that there was no clear and convincing evidence that defendant committed acts of abuse against child); State v. Cleveland, 794 P.2d 546, 551 (Wash. 1990) (no issue preclusion in statutory rape and indecent liberties criminal case following finding by family court that State had not shown by preponderance of evidence that sexual abuse had occurred because dependency proceedings are expedited, dependency is not decided by jury, and State might be incentivized to initiate dependency proceedings only after criminal trial if issue preclusion applied). We hold that the fourth Trepanier factor is also not satisfied here and that the State is therefore not precluded from prosecuting defendant for abusing A.N. and A.C.

Affirmed.

FOR THE COURT:

Associate Justice

12