Filed 12/26/24

| | | |
|---|---|---|
| **VERMONT SUPERIOR COURT** |  | **CIVIL DIVISION** |
| Washington Unit | | Case No. 22-CV-04290 |
| 65 State Street | | |
| Montpelier VT  05602 | | |
| 802-828-2091 | | |
| www.vermontjudiciary.org | | |

---

R.W., et al. v. J.M., et al

---

### Opinion and Order on M.M.'s and J.B.'s Motions for Summary Judgment

Plaintiffs R.W. (Mother) and A.M. (Daughter) claim that Defendant J.M. (Father), with the assistance of Defendants M.M. (paternal Grandmother), S.D., J.B., and K.D., all employees (other than J.M.) of Defendant the Vermont State Department for Children and Families (DCF) during the underlying events, acted in concert to undermine DCF's investigation into alleged abuse and neglect of A.M. by J.M. and the resulting child-in-need-of-supervision (CHINS-A and B) proceeding.[1]  Defendants M.M., S.D., J.B., and K.D. are alleged to have achieved these ends by abusing their authority as DCF employees.  (The CHINS Court determined that A.M. was not CHINS, and that there was no credible basis that J.M. had sexually abused A.M.)  Plaintiffs raise claims against the individual capacity defendants asserting intentional infliction of emotional distress, a violation of Article 11 of the Vermont Constitution, and a violation of the Fourth Amendment to the U.S. Constitution.

M.M. has filed a motion for summary judgment, which J.B. has joined.  They argue: (a) R.W. has no authority to act as A.M.'s "next friend" in this case; (b) the claim preclusion doctrine (*res judicata*) bars all claims in this case based on the concluded

---

[1] The individual parties are referred to by initials pursuant to an order of the Court entered on March 28, 2023.  A.M. is a minor who appears in this case via R.W. as self-appointed "next friend."

CHINS proceeding; and (c) the doctrine of issue preclusion (collateral estoppel) bars any attempt to undermine the CHINS Court's finding that J.M. did not sexually abuse A.M. The Plaintiffs opposed the motion, and the Court held oral arguments on the matter on December 3, 2024.

I.      Procedural Standard

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375, 380.

The facts material to the pending motions are undisputed.

## II. Analysis

### A. R.W.'s Authority to Act as Next Friend

M.M and J.B. argue that R.W. cannot act as A.M.'s next friend because parental rights and responsibilities (PRR), 15 V.S.A. § 665, have been assigned to J.M. in the underlying parentage case. They cite no legal authority in support of this argument other than 15 V.S.A. § 664, which does not address the matter. In earlier proceedings, J.M. made the same argument, also without citing any legal support, and the Court rejected it. *See* Ruling on Pending Motions at 11 (filed July 9, 2023). Absent compelling authority contradicting the earlier ruling, the Court declines to reconsider the matter now. Moreover, at oral argument in this case, M.M. and J.B. appeared to have withdrawn this argument.

### B. Claim Preclusion

M.M. and J.B. argue that all the claims asserted by R.W. and A.M. are foreclosed by the doctrine of claim preclusion due to the CHINS Court's decision on the merits and a decision, filed April 29, 2024, modifying parent–child contact in R.W. and J.M.'s parentage action.

Claim preclusion has no applicability in this case. "Claim preclusion bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical. It applies to claims that were actually litigated and those that should have been raised in previous litigation." *Demarest v. Town of Underhill*, 2021 VT 14, ¶ 11, 214 Vt. 250, 255 (internal quotation omitted). As its name suggests, claim preclusion applies

to *claims.* Neither the CHINS Court nor the parentage Court had jurisdiction to hear the civil damages claims that R.W. and A.M. have raised in this case. In short: there are no claims in this case that were or should (or could) have been raised in those earlier cases. Claim preclusion is irrelevant to this case.

C.     Issue Preclusion

Movants have greater traction as to issue preclusion. Issue preclusion applies to issues of fact or law necessarily decided in previous litigation. "The elements of [issue preclusion] are: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair. Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265 (1990); *see In re Tariff Filing of Cent. Vermont Pub. Serv. Corp.*, 172 Vt. 14, 20 (2001); *Restatement (Second) of Judgments* § 27 cmt. f ("The party contending that an issue has been conclusively litigated and determined in a prior action has the burden of proving that contention.").

M.M. and J.B. argue that the CHINS Court's decision on the merits and a decision, filed April 29, 2024, modifying parent–child contact in R.W. and J.M.'s parentage action preclude any relitigation of whether J.M. sexually abused A.M. The Court is not persuaded.

The only part of the record of the parentage case that is in the record of this case is the April 29, 2024, decision modifying parent–child contact. While that decision reflects deep skepticism from the judge as to the credibility of R.W.'s "belief system" about J.M.'s

alleged abuse and neglect of A.M., the decision itself provides no basis for any conclusions as to elements (2), (3), (4), and (5) of issue preclusion.

As for the CHINS case, the family division has authorized the use of the transcript of the CHINS merits hearing and the DCF investigator's affidavit in this case, pursuant to 33 V.S.A. § 5117(b)(1)(F). *See In re A.M.,* Entry Regarding Motion, No. 115-5-16 Wnjv (Vt. Super. Ct. Aug. 17, 2023). No other part of the record of the CHINS case is available for use in this case. The petition is not in the record, but both CHINS-A (abuse) and CHINS-B (neglect) claims were pursued. The transcript makes clear that R.W. was present and represented by counsel throughout the merits hearing. The Court assumes without deciding that R.W. should be treated as a party, for preclusion purposes, to the proceeding. A.M., of course, was a party.

The principal evidence of sexual abuse presented at the hearing was testimony from one third-party witness (E.S.), who lived in J.M.'s residence for approximately 6 weeks in 2015. A.M. herself did not testify. E.S.'s testimony largely focused on neglect and abuse other than sexual abuse. She briefly and vaguely, however, said that J.M. sexually abused A.M. a "couple" of times in front of her.[2] Ultimately, the judge plainly found E.S. to lack credibility. Following the hearing, the judge clearly said that he did not believe the evidence supported the allegation of sexual abuse, and he further found that A.M. was not CHINS for any asserted reason. The judge broadly stated that there

---

[2] E.S.'s allegation was that J.M., while clothed but aroused, bounced A.M. on his lap in front of E.S. This was alleged to have occurred a couple times. The testimony is not detailed or specific. Apart from this testimony by E.S., most of the three days of hearings was devoted to alleged neglect and nonsexual abuse and, much to the judge's frequently expressed frustration, the alleged conspiracy by DCF employees to torpedo the investigation, which on its own did not help to establish whether A.M. was CHINS or not, the only issue ultimately that mattered at the merits hearing.

was not "any credible evidence whatsoever that [J.M.] has sexually abused A.M. ever."

The Vermont Supreme Court has explained that issue preclusion elements (2) and (3), both reflecting on whether the issue in the prior action and the issue in the current one are the same, often are considered together. *See State v. Nutbrown–Covey*, 2017 VT 26, ¶ 10, 204 Vt. 363, 368. The Court has elaborated:

> Ascertaining whether two issues are the same and whether one issue was necessarily determined "involves a balancing of important interests: on the one hand, a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute." Accordingly, several considerations come into play for a court weighing the second and third . . . factors, including: whether there is substantial overlap in evidence between the two issues; whether any new evidence involves application of a different rule of law; whether pretrial preparation and discovery related to the first matter could have reasonably been expected to embrace the matter at issue in the second; and how closely related the two claims are to each other.

*Id.*, 2017 VT 26, ¶ 10, 204 Vt. at 368–69 (citations omitted).

Fairness elements (4) and (5) also are considered together:

> The fourth and fifth elements—whether there was a full and fair opportunity to litigate and whether it is fair to apply preclusion here—are generally considered together. No one test is decisive. Factors to consider include: the type of issue preclusion, the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens in each action, the procedural opportunities of each forum, and the possibility of inconsistent determinations.

*In re P.J.*, 2009 VT 5, ¶ 13, 185 Vt. 606, 609.

Several observations in *Nutbrown–Covey*, 2017 VT 26, 204 Vt. 363, have resonance with the Court in this case. There, a criminal defendant sought to use a CHINS determination as to one of her children in a subsequent criminal case regarding abuse of her other two children where both cases included some of the same allegations. The Court said no, distinguishing the issues and nature of the proceedings and out of

considerations of fairness to one of the parties—the State. It explained that, even if there would be overlap in the evidence, "commonality of evidence alone is insufficient for issue preclusion; the actual factual or legal question presented in the first action must be the same as the question presented in the second." *Id.*, 2017 VT 26, ¶ 13, 204 Vt. 363, 370. It further noted that the prior proceeding focused on neglect, not abuse, and "pretrial preparation and discovery related to neglect of J.N. could not have been reasonably expected to embrace the question of abuse of A.N. or A.C." *Id.* The Court also explained that the focus of the proceedings is fundamentally different: "a criminal case seeks to identify any misconduct on the part of a defendant; a CHINS case seeks to identify how to best protect the child, regardless of whether or not the child's parent has engaged in misconduct." *Id.*, 2017 VT 26, ¶ 14, 204 Vt. 363, 371.

The Court found that the procedural differences were acute. "The short time to hold a merits hearing after the filing of the CHINS petition—which stems from the necessity for prompt resolution in a situation where a child's custody is potentially being litigated—means that in a CHINS proceeding the State may have a more limited opportunity, compared to a criminal case, to conduct discovery, to prepare witnesses, and to otherwise ready the case for a merits hearing." *Id.*, 2017 VT 26, ¶ 17, 204 Vt. 363, 372–73. Giving a CHINS court's findings preclusive effect in a subsequent criminal case would incentivize the parties to litigate the CHINS case far more thoroughly, causing harmful delay. *Id.*, 2017 VT 26, ¶ 19, 204 Vt. 363, 373. "Additionally, the State has an interest in having a jury rather than a judge make determinations about the credibility of witnesses, the factual basis for the criminal prosecution, and the weight to give to proffered evidence." *Id.*, 2017 VT 26, ¶ 20, 204 Vt. 363, 373.

As to this case, M.M. and J.B. seriously exaggerate the breadth of the finding as to sexual abuse in the CHINS proceeding, and they minimize the allegations of abuse here. Issue preclusion applies to specific factual or legal issues resolved in the former adjudication. In the CHINS proceeding, while it did raise an abuse claim (unlike in *Nutbrown*), the claim only encompassed what E.S. claimed to have observed. The Court clearly found E.S. lacked credibility. But, despite the expansive wording of the Court's ruling, the evidence presented constrains the scope of the Court's finding. The most that the Court could have found is that the evidence presented did not establish that the "couple" of acts described by E.S. had occurred. That is not the same fact that M.M. and J.B. seek to rely on here—that no sexual abuse of any kind occurred, a dramatically broader "fact" than the CHINS Court's limited finding. R.W. and A.M. appear to allege that there was a stream of sexual abuse, well beyond anything addressed at the CHINS hearing. It is, thus, by no means clear that the identical alleged acts of sexual abuse are at stake here as were at stake in the CHINS case.

Procedural differences between the CHINS case and this case also are profound. This case need not unfold on the expedited timeframe CHINS cases do, providing a fuller opportunity for discovery and consideration of the evidence. Moreover, while R.W. and A.M. were parties to the CHINS case, they were not in control of the litigation, DCF held the reins. As a parent and a child litigating with DCF, their arguments at that time may not be fully in line with their positions now. And a jury will be available in this case to make credibility determinations.

The Court reiterates what the *Nutbrown–Covey* Court said: "a CHINS case seeks to identify how to best protect the child, regardless of whether or not the child's parent

has engaged in misconduct."  Even though R.W. may have fully believed that J.M. had sexually abused A.M. at the time of the CHINS merits hearing, it does not follow that she, as a parent, necessarily would have wanted A.M. adjudicated CHINS by the State much less understood that she should have some affirmative role in offering or developing evidence to prove  that A.M. should be adjudicated CHINS.  Her motivation to litigate the sexual abuse question in that case is not necessarily the same as it is here.

It bears noting as well that Plaintiffs' fundamental theory of the case here is that conspiratorial wrongdoing within DCF demonstrably undermined the CHINS investigation, concealing the evidence that would have supported the various allegations of abuse (sexual or otherwise), making the outcome there a foregone conclusion.  In the context of their preclusion motion, M.M. and J.B. have not attempted to show that the conspiracy did not happen.  In the context of the present allegations, then, that alleged concealment lends further support to the view that R.W. and A.M. should not be bound to results of that prior, allegedly tainted proceeding,  *Cf. Lay v. Pettengill*, 2011 VT 127, ¶ 26, 191 Vt. 141, 157 ("We agree that it would be unfair to preclude a plaintiff from arguing lack of probable cause [in a subsequent civil suit] when a criminal tribunal found probable cause on the basis of false testimony that the plaintiff is only now in a position to show to be false."); *Restatement (Second) of Judgments* § 28 cmt. j (concealment can indicate unfairness of preclusion in certain circumstances); 18 Edward H. Cooper, *et al., Fed. Prac. & Proc. Juris*. § 4423 (3d ed.) (same).

Following the December 3, 2024, hearing in this case, the Court requested supplemental briefing from the parties as to whether R.W., as the noncustodial parent at the time of the CHINS proceeding, had authority to appeal the determination that A.M.

was *not* CHINS (no one appealed). *See In re M.C.*, 156 Vt. 642, 643 (1991) (noncustodial parent had no authority to appeal dismissal of CHINS petition because it did not enlarge or diminish her rights). The significance of the question is that, if she did not, the issue preclusion doctrine generally would—for that reason alone—not apply in this action. *See Restatement (Second) of Judgments* § 28(1) (no preclusion if party against whom it is asserted had no legal authority to seek review of former judgment).

In response, M.M. and J.B. have argued that R.W. was a party to the CHINS case with the right to appeal the denial of the petition. R.W. argues that, as the noncustodial parent, she is not properly treated as a party with a right to appeal the denial on the merits. Both arguments have some merit, and the issue has not been determined by the Supreme Court. The Court need not resolve the issue in this matter, as it can decide the present motion based on the *Trepanier* Factors.

On balance, the Court concludes that, because the issues are not exactly parallel, because the litigation controlled by DCF and with very different interests at play may not have afforded R.W. a full opportunity to contest the issue, and because the Court is not convinced that it would be fair to bind R.W. and A.M. to that prior determination, issue preclusion does not apply in this instance.

To the extent that R.W. and A.M. have asserted that they need more discovery before the Court rules on M.M.'s and J.B.'s motions for summary judgment, that request now is moot. *See* Vt. R. Civ. P. 56(d).

Conclusion

For the foregoing reasons, M.M.'s and J.B.'s motions for summary judgment are denied.

The Court also notes that various discovery motions have been pending. Some of the discovery sought was denied based on the presence of the existing motion. In light of the Court's resolution of the preclusion issues, those motions are deemed moot and denied without prejudice. Given the present ruling, the parties shall confer as to a schedule for additional production. To the extent some disputes remain thereafter, the process envisioned by Vt. R. Civ. P. 26(h) should be followed.

Electronically Signed on December 24, 2024, per V.R.E.F. 9(d)

Timothy B. Tomasi
Superior Court Judge