NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 107

No. 2019-324

In re Appeal of H.H. | Supreme Court

| On Appeal from
| Human Services Board

| September Term, 2020


Michael J. Donohue, Chair

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Zoe Newman, Assistant Attorney General, Waterbury, for Petitioner-Appellee Department for Children and Families.

Matthew Valerio, Defender General, and Marshall Pahl, Deputy Defender General, Montpelier, for Respondent-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.   **EATON, J.**   Petitioner H.H. appeals from a Human Services Board order upholding the Department for Children and Families' (DCF's) substantiation of a report that she placed her daughter at risk of harm from sexual abuse pursuant to 33 V.S.A. § 4912. The Board granted summary judgment to the State, concluding that the stipulated findings in a related child-in-need-of-care-or-supervision (CHINS) proceeding precluded petitioner from contesting her substantiation and resulting placement on the Child Protection Registry. Petitioner argues that the Board erred in applying collateral estoppel on the basis of the CHINS adjudication. We agree, and therefore reverse and remand.

¶ 2.     Because the issues in this case turn on the interrelation of separate family-court and administrative proceedings arising from the same allegations, we recount the factual and procedural history underlying both in some detail.

¶ 3.     In October 2015, when the events triggering these proceedings took place, petitioner's daughter, S.H., was six years old.  Petitioner and S.H. lived with S.H.'s father, who is petitioner's former spouse; S.H.'s nine-year-old brother, T.H.; petitioner's boyfriend; and several other adults and children.  After receiving a report that S.H. had been sexually abused by an adult in the home ("the October 2015 report"), DCF filed petitions alleging that S.H. and T.H. were CHINS.  Specifically, DCF alleged that both S.H. and T.H. were without proper parental care or subsistence, education, medical, or other care necessary for their well-being (CHINS-B), under 33 V.S.A. § 5102(3)(B), and that S.H. was CHINS on grounds of abandonment or abuse (CHINS-A), under 33 V.S.A. § 5102(3)(A).[1]

¶ 4.     The family court later granted the parents' motion to dismiss the CHINS-A allegation, concluding the petition did not demonstrate that S.H. was a child abused by her parent, guardian, or custodian, as required under § 5102(3)(A).  Subsequently, both parents stipulated that the court could find S.H. and T.H. were CHINS-B on the basis of a set of agreed facts.

¶ 5.     Specifically, the parties to the CHINS proceeding agreed as follows:  At the time DCF filed the petitions, "[i]n addition to the family living in the home, [Individual 1], [Individual 2] and her two minor children, and [Individual 3] were living in the home.  [Individual 4] stayed overnight at the home on one occasion just prior to the petitions being filed."[2]  DCF—which had

---

[1]   Although two CHINS petitions were filed, one for each child, only the petition concerning S.H. is at issue here.  For reasons not relevant to this appeal, both petitions were later dismissed, and the matters proceeded under amended petitions filed the following month.  We refer hereafter to the CHINS action as the proceeding under the amended petition relative to S.H.

[2]   We use this nomenclature because, while it is necessary for our purposes to distinguish among the individuals named in the stipulation, the names of these nonparties are irrelevant to the issues on appeal.  Individual 1 was later ruled out as the alleged perpetrator on the basis of DNA

2

been working with the family for several months on an open case—was aware that Individual 1 had resided in the home for years. The parents, both of whom received support services for developmental disabilities, had "significant" historical involvement with DCF around issues such as "allegations of risk of harm, physical abuse, risk of sexual abuse, drug use, lack of good hygiene, and failure by the parents to provide adequate supervision or prevent inappropriate or unsafe people to be around their children." Over the years, DCF sought to engage the parents in different support services relative to these concerns, and they were "at times . . . resistant, and at other times cooperative." The parties agreed that T.H. "had a significant history of wetting himself, and began acting out sexually in the past few years."

¶ 6. The stipulation further provided that both parents were aware through their past work with DCF "that they were supposed to ensure 'safe' people were within their home when the children were present." However, they at times unknowingly "allowed inappropriate individuals who have been substantiated for sexual abuse [and] had mental health and substance abuse issues, and individuals with criminal records into their home and . . . allowed these people to reside with them." On some occasions, the parents "provided insufficient supervision" of the children, including during an incident where the father taped T.H.'s hands and feet together while playing, causing T.H. to fall and hit his head on a table. This insufficient supervision also resulted in "the children either being touched, or propositioned, inappropriately in a sexual manner by other minors who were in the home." Finally, the stipulation described a recent witness report—presumably, the October 2015 report—that "someone touched [S.H.] in a sexual manner," and explained that this allegation resulted in the State filing the CHINS action. There was no stipulation as to the identity of the alleged perpetrator, although the parties agreed that the parents "were unhappy at suggestions that [Individual 1] leave the home." The court adopted these stipulations as its

_____

evidence, and the record does not indicate that any of the other identified individuals were either charged with or convicted of a crime, or substantiated for abuse.

3

findings, concluding on this basis that both S.H. and T.H. were CHINS because they were "without proper parental care or subsistence, education, medical, or other care necessary for their well-being."

¶ 7. The family court later terminated the rights of both parents to S.H. and T.H. following a contested hearing. It concluded that, after the CHINS adjudications, each parent had stagnated in progressing toward the case-plan goals, and it was in the children's best interests that the parents' rights be terminated. Both parents appealed; we affirmed. In re S.H., No. 2017-430, 2018 WL 1750566 (Vt. Apr. 6, 2018) (unpub. mem.), https://www.vermontjudiciary.org/ sites/default/files/documents/eo17-430.pdf [https://perma.cc/HYZ8-CSXU].

¶ 8. The instant proceeding arose when, during the pendency of the family-court action, DCF substantiated the October 2015 report, concluding that petitioner had placed S.H. at risk of harm from sexual abuse. A report is "substantiated" where DCF determines, following an investigation, that it "is based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." 33 V.S.A. § 4912(16); see also In re R.H., 2010 VT 95, ¶ 3, 189 Vt. 15, 14 A.3d 267. Substantiated reports are placed in the Child Protection Registry, the purpose of which is to safeguard children by allowing certain individuals working in fields involving contact with children to access a list of persons substantiated for child abuse or neglect. 33 V.S.A. §§ 4911(5), 4916(a)(1), 4919.

¶ 9. Petitioner contested DCF's substantiation decision. See id. § 4916a(c)(1) (allowing person alleged to have abused or neglected child to seek administrative review of DCF's intention to place name on Registry). However, a registry reviewer concluded that a reasonable person would find the legal and policy standards for substantiation had been met and determined that it was appropriate for petitioner's name to be placed on the Registry. Petitioner exercised her right to appeal this decision to the Human Services Board. See id. § 4916b(a).

4

¶ 10. The appeal from the substantiation determination proceeded first before a hearing officer appointed by the Board.[3] DCF moved for summary judgment, arguing that petitioner was collaterally estopped from contesting her substantiation because the legal question presented had been resolved in the family-court findings that resulted in termination of the parents' rights (TPR). Petitioner opposed DCF's summary-judgment motion, arguing that the TPR decision did not answer the question posed in the substantiation proceeding because the dispositive issues in a TPR proceeding are whether the parents have made progress in addressing the problems identified in the disposition order, and the best interests of the children involved—not the merits of the allegation which gave rise to the proceeding. Petitioner also contended that the Board could not rely upon the copy of the CHINS decision appended to its motion for summary judgment because the limited circumstances allowing for inspection of confidential juvenile case records, see 33 V.S.A. § 5117(b), were not present.

¶ 11. At a subsequent status conference, before any hearing on DCF's summary judgment motion, the hearing officer indicated an intent to issue a final written recommendation that the Board grant the motion. However, the hearing officer did not communicate the basis for her decision to the parties at that time. The next month, a Board employee informed the parties that, in order to complete the recommendation, "it w[ould] be necessary to obtain and review a final copy of the Order and Decision in the CHINS matter" that had been referenced in the TPR order. DCF furnished this and other documents. The hearing officer then emailed the parties, noting that the documents did not provide sufficient detail about the CHINS proceeding to support a ruling on the motion for summary judgment. She requested the original CHINS petition and

---

[3] A hearing officer is a neutral arbiter tasked with ruling on motions and questions relating to the presentation of the appeal before the Board; those rulings are then reduced to a recommended order which is submitted to the Board. 3 V.S.A. § 3091(b), (c); Fair Hearing Rules § 1000.3(A), Code of Vt. Rules 13 020 002, https://humanservices.vermont.gov/sites/ahsnew/files/fair-hearing-rules-1.pdf [https://perma.cc/C6VX-LGHL].

5

supporting affidavit, as well as documentation of the report of sexual abuse described in the CHINS stipulation.

¶ 12.   At a later status conference, petitioner was directed to file a statement of disputed facts addressing the information in these documents.  Petitioner did so, renewing her opposition to the summary-judgment motion on the grounds that the CHINS records were inadmissible.  She also objected to the procedure followed in the appeal as a violation of her due process rights, arguing that the request that she file a statement of disputed facts with respect to facts not alleged by DCF in its initial motion had improperly shifted DCF's burden of proof to her.

¶ 13.   As forecasted, the hearing officer recommended that the Board grant summary judgment to DCF on collateral-estoppel grounds, concluding that the issue decided in the CHINS adjudication was the same as the question on appeal.  The Board heard oral arguments on whether to adopt the hearing officer's recommendation.  Petitioner opposed her substantiation on the same grounds presented to the hearing officer.  In a written decision, the Board held that the CHINS adjudication and stipulated facts were appropriately considered.  It concluded that the question of whether a reasonable person would believe petitioner exposed S.H. to a risk of harm from sexual abuse had been answered in the earlier CHINS adjudication, and, on that basis, granted summary judgment for DCF, affirming petitioner's substantiation and placement on the Registry.  This appeal followed.

¶ 14.   Petitioner raises three claims of error on appeal: (1) the Board erred in basing its summary-judgment decision on the CHINS adjudication because, pursuant to 33 V.S.A. § 5117(b)(1)(F), the documents concerning those proceedings could not be disclosed absent a family-court order; (2) her procedural due process rights were violated by the procedure followed before the hearing officer in obtaining additional information from DCF; and (3) even assuming that the facts supporting the CHINS adjudication were appropriately considered here, that information did not support the application of collateral estoppel.  Because we conclude that the

6

Board improperly considered confidential family-court documents absent the "need-to-know" designation required under § 5117(b)(1)(F), we reverse and remand. As a result, the disposition of this case does not require us to address the due process challenge raised by petitioner, and we do not consider it. See State v. Curtis, 157 Vt. 275, 277, 597 A.2d 770, 772 (1991) ("Under longstanding practice and precedent, we must not consider constitutional questions unless the disposition of the case requires it."). However, because we conclude that the issue is likely to recur on remand, we will address the parties' disagreement regarding the sufficiency of the CHINS stipulation as grounds for collateral estoppel. See Shaddy v. Brattleboro Retreat, 2012 VT 67, ¶ 12 n.3, 192 Vt. 215, 57 A.3d 700 (reaching res judicata issue although not necessary to disposition of case "because it is likely to arise on remand and is purely a question of law").

¶ 15. Whether the Board properly considered the family-court records is a question of law that we review de novo. In re P.J., 2009 VT 5, ¶ 7, 185 Vt. 606, 969 A.2d 133 (mem.) (observing that we review questions of law outside the Board's area of expertise de novo). However, where we conclude that a specific piece of evidence was admitted in error, we will reverse only if the appellant can show that the error was not harmless. Passion v. Dep't of Soc. and Rehab. Servs., 166 Vt. 596, 597, 689 A.2d 459, 461 (1997) (mem.) (noting in appeal from substantiation decision that "[p]etitioner must show not only that the Board erred in admitting evidence of the 1992 . . . investigation, but that the admission prejudiced petitioner"). We likewise review the Board's decision on the applicability of the collateral estoppel doctrine de novo. In re P.J., 2009 VT 5, ¶ 7.

¶ 16. We begin with petitioner's evidentiary challenge. Subject to a narrow set of exceptions, records of juvenile judicial proceedings—such as the CHINS stipulation and order on which the Board based its decision here—are confidential. 33 V.S.A. § 5117; In re D.C., 2016 VT 72, ¶ 12, 202 Vt. 340, 149 A.3d 466. Section 5117(b)(1) enumerates those limited circumstances in which "inspection of such records and files . . . is not prohibited." As petitioner points out, only

one of the exceptions could conceivably apply here: inspection of juvenile records and files is permitted to a "person who has a need to know . . . designated by order of the Family Division of the Superior Court." 33 V.S.A. § 5117(b)(1)(F). It is uncontested that no such designation order was requested or granted here. Petitioner argues that as a result, the juvenile case records supporting the CHINS determinations were not properly admitted before the Board and cannot form the basis of a grant of summary judgment.

¶ 17. In addressing this issue, the Board concluded that no designation order was necessary, reasoning that § 5117(b)(1) governs only disclosure of juvenile records to "the public." In addition, it held that the statute relating to appeals from substantiation decisions renders the records admissible by providing that "[c]onvictions and adjudications that arose out of the same incident of abuse or neglect for which the person was substantiated, whether by verdict, by judgment, or by a plea of any type . . . shall be competent evidence in a hearing held under this subchapter." 33 V.S.A. § 4916b(b)(4). Finally, the Board cited <u>In re P.J.</u>—a case in which we upheld the application of collateral estoppel in a substantiation proceeding on the basis of a CHINS adjudication arising from the same alleged incident—as support for the admissibility of the records in question here. 2009 VT 5, ¶ 6.

¶ 18. Because our goal in interpreting statutes is to effectuate the Legislature's intent, we look first to the plain language of the provisions at issue. See <u>In re 204 N. Ave. NOV</u>, 2019 VT 52, ¶ 5, __ Vt. __, 218 A.3d 24. Where that statutory language is clear and unambiguous, we look no further. <u>Id</u>. By its plain terms, § 5117 prohibits inspection of juvenile records by any person or entity outside the narrow set of exceptions laid out therein, regardless of public or nonpublic designation. See 33 V.S.A. § 5117. Indeed, the Legislature's inclusion of specific provisions allowing inspection by, inter alia, "a court having the child before it in any juvenile judicial proceeding," or a criminal court "for the purpose of imposing sentence," <u>id</u>. § 5117(b)(1)(A), (C), would be entirely superfluous if § 5117(b)(1) were inapplicable to nonpublic entities such as the

8

Board or other tribunals.  See State of Vt. Agency of Nat. Res. v. Parkway Cleaners, 2019 VT 21, ¶ 24, 209 Vt. 620, 210 A.3d 445 (holding that because we presume Legislature inserted statutory language advisedly, we will not construe it "in a way that renders a significant part of it pure surplusage" (quotation omitted)).  It is obvious, then, that the Legislature intended no such limitation.  The clear import of § 5117 is that inspection of the family-court records before the Board is permissible only pursuant to a need-to-know designation issued by the family court.  See 33 V.S.A. § 5117(b)(1)(F).

¶ 19.  On appeal, DCF urges us to affirm the Board's conclusion that § 4916b(b)(4)—providing that family court adjudications are "competent evidence" in a substantiation proceeding—makes the evidence admissible independent of the requirements of § 5117.  DCF takes the position that, when read in concert with subsection (c) of § 4916b, "the only logical meaning is that the Legislature expected the Board to have access to family court proceedings." See id. § 4916b(c) (providing that Board hearing "may be stayed upon request of the petitioner if there is a related case pending in the Criminal or Family Division of the Superior Court that arose out of the same incident of abuse or neglect for which the person was substantiated").  While we agree that the language of § 4916b(c) reflects a general expectation that the Board will have access to such adjudications, it by no means follows that the Legislature contemplated that the Board will have access to such adjudications outside of the procedure for obtaining them mandated by § 5117(b)(1)(F).

¶ 20.  The § 4916b argument, too, is resolved by the plain language of the statute in question.  See 204 N. Ave. NOV, 2019 VT 52, ¶ 5.  That an adjudication arising from the same incident underlying the substantiation is "competent evidence" does not mean that the evidence is admissible in a substantiation proceeding under any and all circumstances.  See, e.g., State v. Lizotte, 109 Vt. 378, 385, 197 A. 396, 399 (1938) (holding that "[w]hile it is always competent for a [defendant] to give evidence tending to show that another committed the crime of which he

9

is charged," the evidence proffered on this point was nonetheless inadmissible for other reasons (quotation omitted and emphasis added)). Just as "lack of competency is not the only reason to exclude the testimony of a witness," lack of competency is not the only reason to exclude a document offered into evidence. See Reporter's Notes, V.R.E. 601 (explaining that "all witnesses are competent except as expressly provided by statute or elsewhere in the rules," but their testimony may nonetheless be inadmissible on separate grounds). Under no reading of § 4916b(b)(4) does that provision create an exception to the confidentiality requirements of § 5117. Indeed, where the Legislature has intended to exempt a person or entity from the requirements of § 5117, it has done so explicitly, by designating the persons or entities permitted to inspect the record and the circumstances under which inspection is permitted.[4] See, e.g., 33 V.S.A. § 5117(b)(1); see also Daniels v. Vt. Ctr. for Crime Victims Servs., 173 Vt. 521, 523, 790 A.2d 376, 379 (2001) (mem.) (holding that where "Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority"). Thus, although § 4916b(b)(4) designates the family court's adjudication "competent evidence" in a substantiation proceeding, it does nothing to circumvent the clear requirement in § 5117(b)(1)(F) that the Board receive that evidence only when its release has been authorized by a designation order from the family court.

¶ 21. The Board's citation to In re P.J. is similarly misdirected: although that case addressed the sufficiency of a CHINS adjudication as a basis for collateral estoppel in a substantiation proceeding, it included no challenge to the admissibility of the family-court documents related to the adjudication. 2009 VT 5. It therefore contains no holding relevant to the evidentiary question at issue here. See Derosia v. Firland, 83 Vt. 372, 382, 76 A. 153, 156 (1910)

---

[4] If the Legislature intends the Board in substantiation proceedings to have access to related family-court records absent a "need-to-know" designation from the family court, this can be accomplished by amending § 5117(b)(1) to create an exception encompassing this circumstance.

(holding that only propositions of law "necessarily involved in the determination of [a] case" subsequently become "doctrine of the case for which the decision is authority").

¶ 22.  A need-to-know designation from the family court was required before the Board could inspect the contents of the juvenile files in question.  Having bypassed this essential step, the facts stipulated to in the CHINS proceeding were not properly considered by the Board as a basis for summary judgment.  See V.R.C.P. 56(c)(2) (providing that party may oppose summary judgment on basis that "material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); Reporter's Notes—2012 Amendment, V.R.C.P. 56 (stating that all facts asserted in support of motion for summary judgment, "must be based on admissible evidence").  Because the Board explicitly designated the CHINS adjudication as the foundation of its summary-judgment ruling, there can be no argument that its admission was harmless.  Cf. Passion, 166 Vt. at 597, 689 A.2d at 461 (holding Board's error in admitting evidence "harmless" where "merely cumulative with evidence admitted without objection").  Therefore, the Board's decision as to the application of collateral estoppel is reversed and the matter remanded.

¶ 23.  However, because petitioner's argument that the stipulated facts supporting the CHINS adjudication form an insufficient basis for collateral estoppel is one that is likely to arise upon remand, we address it here.  See Shaddy, 2012 VT 67, ¶ 12 n.3.  As we explained in In re P.J., collateral estoppel may preclude relitigation, in a subsequent substantiation proceeding, of issues "necessarily and essentially determined" in an earlier CHINS adjudication.  2009 VT 5, ¶ 12 (quotation omitted).  But the doctrine is appropriately applied only where five elements—known as Trepanier factors—are present:

> (1) preclusion is asserted against one who was a party . . . in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

Id. ¶ 8 (alteration in original) (quoting Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265, 583 A.2d 583, 587 (1990)). It was on this basis in In re P.J. that we concluded that a petitioner applying to expunge her name from the registry was collaterally estopped from seeking an evidentiary hearing on the question of whether a nutritional-neglect report involving her child was appropriately substantiated because an earlier CHINS adjudication precluded relitigation of that issue. Id. ¶¶ 9, 12. In this case, the Board set its navigation by the belief that the Trepanier analysis in In re P.J. was indistinguishable from that applied here. As a result, it concluded that the family court's CHINS determination "necessarily means that the allegations of risk of harm of sexual abuse" were established against petitioner for purposes of her substantiation.

¶ 24.    The Board is correct that here, as in In re P.J., the first Trepanier factor is satisfied because petitioner was party to both the CHINS action and the substantiation proceeding. Id. ¶ 10. Likewise, and as was the case in In re P.J., the CHINS proceeding at issue here resulted in a final judgment on the merits, as required by the second Trepanier factor. See id. ¶ 11; see also In re C.P., 2012 VT 100, ¶ 28, 193 Vt. 29, 71 A.3d 1142 (holding that a determination as to CHINS merits, "while not the last word on the subject . . . is certainly a final judgment"). But the Board's conclusion that collateral estoppel applies here through the analysis of the Trepanier factors comes a cropper—and the similarities to In re P.J. evaporate—when we reach the critical inquiry into the identity of issues between the two proceedings.

¶ 25.    Under the third Trepanier factor, collateral estoppel applies only to those issues "necessarily and essentially determined in a prior action." State v. Nutbrown-Covey, 2017 VT 26, ¶ 11, 204 Vt. 363, 169 A.3d 216 (quotation omitted). Ascertaining whether an issue is the same as one necessarily determined in a prior action " 'involves a balancing of important interests: on the one hand, a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute.' " Id. (quoting

Restatement (Second) of Judgments § 27 cmt. c (1982)). As a result, in "weighing the second and third Trepanier factors," courts analyze:

> whether there is substantial overlap in evidence between the two issues; whether any new evidence involves application of a different rule of law; whether pretrial preparation and discovery related to the first matter could have reasonably been expected to embrace the matter at issue in the second; and how closely related the two claims are to each other.

Id. These considerations alone are not dispositive; rather, the key question remains whether "the actual factual or legal question presented in the first action" is "the same as the question presented in the second." Id. ¶ 13.

¶ 26. The question presented in the CHINS adjudication was whether, at the time the petition was filed, S.H. was "without proper parental care or subsistence, education, medical, or other care necessary for . . . her well-being." 33 V.S.A. § 5102(3)(B). We have explained that this particular statutory language "must be liberally construed" to effectuate the law's purpose, which is to provide for the welfare of children. In re B.R., 2014 VT 37, ¶¶ 15-16, 196 Vt. 304, 97 A.3d 867 ("[A] statute providing the basis for determining who are neglected children should be liberally construed so as to aid the purpose of its enactment." (alteration in original) (quoting In re N.H., 135 Vt. 230, 234, 373 A.2d 851, 855 (1977)). Indeed, because the "focus of a CHINS proceeding is the welfare of the child," In re C.P., 2012 VT 100, ¶ 28, a court may properly find that a child is CHINS even if only one of two custodial parents " 'might be responsible for the children's lack of care.' " In re B.R., 2014 VT 37, ¶ 22 (quoting In re F.P., 164 Vt. 117, 121-22, 665 A.2d 597, 600-01 (1995)). For the same reason, "the State is not required to demonstrate that the child has suffered actual harm," but may instead find that she is CHINS because she is at risk of harm, and "may rely on evidence of the treatment of a sibling in concluding that a child is . . . CHINS." In re J.C., 2016 VT 9, ¶ 7, 201 Vt. 192, 138 A.3d 830 (quotation omitted). The breadth

of this inquiry is borne out by the corresponding scope of the stipulated findings supporting the family court's adjudication of S.H. as CHINS-B. See supra, ¶¶ 5-6.

¶ 27. In contrast, the question in this substantiation proceeding is far narrower: was the October 2015 report to DCF based upon "accurate and reliable information" which would "lead a reasonable person to believe" that petitioner placed six-year-old S.H. at risk of harm for sexual abuse by not protecting her from sexual assault by a male staying in her apartment? 33 V.S.A. § 4912(16). Its answer cannot be found in the court's findings in the CHINS-B adjudication, nor is it necessarily or essentially revealed by that adjudication itself.

¶ 28. We first observe that, although the parties stipulated that the CHINS petitions were filed following allegations that "someone touched [S.H.] in a sexual manner," the stipulation was silent as to the ultimate veracity of those allegations. See supra, ¶¶ 5-6. And although the court found that both parents were aware that they needed to ensure "safe" people were in the home, it also indicated that when "inappropriate individuals" who had been substantiated for sexual abuse resided there, the parents were unaware of those individuals' backgrounds.[5] Indeed, this was so despite the fact that DCF had been actively engaged with the family for many years, and was aware that Individual 1 lived in the home for several years before the incident giving rise to the petition. Moreover, although the parties stipulated that petitioner was "unhappy at suggestions" that Individual 1 leave the home, nothing in the stipulation connects Individual 1 to the finding that there was a report that "someone touched [S.H.] in a sexual manner." The family court's finding that the parents "at times provided insufficient supervision" leading to "the children either being touched, or propositioned, inappropriately in a sexual manner by other minors who were in the

_____

[5] Notably, the parties did not stipulate that any of these persons had been substantiated for sexual abuse of a child. See 33 V.S.A. § 4912(14)(F) (explaining that, as relevant here, " '[r]isk of harm' means a significant danger that a child will suffer serious harm by other than accidental means, which harm would be likely to cause . . . sexual abuse," including harm arising from "a registered sex offender or person substantiated for sexually abusing a child residing with or spending unsupervised time with a child" (emphasis added)).

14

home" lacks congruence with the incident alleged as a basis for the substantiation—that petitioner failed to protect S.H. from "sexual assault by a male" in the home.

¶ 29. With these findings in mind, the distinction between this case and In re P.J. is obvious. In In re P.J., we found an identity of issues based on the family court's explicit finding that the allegations set forth in the CHINS petition and supporting affidavit had been established. 2009 VT 5, ¶ 12. Because the CHINS petition had "asserted that [the child] was without proper parental care, based on an affidavit that set forth the facts regarding mother's neglect of [the child's] nutritional and medical needs," the finding that these "allegations were established necessarily meant that the facts establishing that mother neglected [the child's] nutritional needs were determined to be true." Id. Thus, as we later recognized, In re P.J. is distinguished by the fact that in the underlying CHINS adjudication, "the family court actually determined that the mother nutritionally neglected [the child] and mother agreed to this determination." In re Harwood, 2013 VT 89, ¶¶ 12, 15, 195 Vt. 7, 86 A.3d 976 (holding probate court's termination of petitioner's guardianship based on finding petitioner did not have ability to care for vulnerable adult did not support substantiation on "entirely distinct" question of whether petitioner abused adult on given occasion).

¶ 30. Here, however, the court did not conclude that the allegations in the affidavits supporting the petitions had been established. Nor did the battery of stipulated facts supporting the CHINS adjudication substantially overlap with the evidence required to support petitioner's substantiation for failure to protect S.H. from being sexually assaulted by a male residing in the home. See Nutbrown-Covey, 2017 VT 26, ¶ 11 (explaining that "whether there is substantial overlap in evidence between the two issues" is consideration with respect to second and third Trepanier factors). Rather, the stipulated facts contained ample considerations supporting the conclusion that S.H. was without necessary care or supervision from one or both parents—including the treatment of her brother, T.H. The CHINS-B adjudication did not require the court

to determine S.H. had been sexually assaulted by a male in the home and that such assault was a result of petitioner's failure to protect her.

¶ 31. In sum, although the substantiation and CHINS proceedings both arose from the same October 2015 report, the ultimate factual and legal questions presented are distinct. The CHINS adjudication necessarily determined only that the children were without care or supervision in that they were without essential care from one or both parents. It did not necessarily or essentially determine the far more specific question presented in the substantiation proceeding, which was whether petitioner placed S.H. at risk of harm from sexual abuse by not protecting her from sexual assault by a male staying in the apartment. Although in some cases, a CHINS adjudication may have adequate identity of issues to support the application of collateral estoppel in a substantiation proceeding arising from the same allegation, see, e.g., In re P.J., 2009 VT 5, this one did not. Thus, even assuming the facts supporting the CHINS adjudication had been appropriately admitted under § 5117(b)(1)(F), the Trepanier test was unsatisfied, and collateral estoppel was not appropriately applied because the stipulated facts did not establish what was necessary to support the substantiation. Summary judgment should not have been granted to DCF on the basis of collateral estoppel.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

16