NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 54

Nos. 23-AP-124 & 23-AP-126

| | |
|---|---|
| In re A.O. & I.O., Juveniles | Supreme Court |
| In re B.G. & E.G., Juveniles | On Appeal from Superior Court, Rutland Unit, Family Division |
| | September Term, 2023 |

David A. Barra, J.

Sarah Star, Middlebury, for Appellant Mother.

Matthew Valerio, Defender General, Kerrie Johnson, Juvenile Defender, and Ri Marchessault, Law Clerk (On the Brief), Montpelier, for Appellant Father (23-AP-124).

Nicholas R. Battey, Rutland County Deputy State's Attorney, and Arthur O. Brown (Legal Intern), Rutland, for Appellee State.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **REIBER, C.J.** Mother appeals from the decisions of the family division of the superior court finding her four minor children B.G., E.G., I.O., and A.O. to be children in need of care or supervision (CHINS). Mother's husband J.O., who is the father of I.O. and A.O., appeals from the decisions concerning those children. We conclude that the CHINS determinations were not supported by the court's findings or the evidence, and therefore reverse the CHINS merits and associated disposition orders. We also conclude that the court erred in permitting the

dissemination of certain records from the CHINS proceedings to J.O. and his advocate in a separate administrative appeal and reverse that order as well.

¶ 2. When this proceeding began, all four children were living with mother and J.O. J.O. is the father of I.O., born in 2019, and A.O., born in 2021. Mother's ex-husband is the father of B.G., born in 2012, and E.G., born in 2015.

¶ 3. In August 2021, the State filed petitions alleging that B.G., E.G., A.O., and I.O. were CHINS because they had been exposed to domestic violence between mother and J.O. and mother had failed to take steps to protect them. The affidavits filed in support of the petitions made the following allegations. In May 2021, after an incident in the home involving J.O. and mother, she called her father-in-law seeking help, and he contacted police on her behalf. When police arrived at the family's home, mother reported to the responding officers that J.O. had been drinking. Sensing that he might become violent, mother had tried to leave the home with the two younger children. She put five-month-old A.O. in her car seat and was in the bathroom with I.O., who was then seventeen months old. J.O. entered the bathroom and cornered mother. He yanked out a chunk of her hair and threw a full can of soda at her, striking her in the face. When police arrived, J.O. had locked himself in the house and refused to come out. Mother told police that J.O. had previously strangled her on several occasions. J.O. was arrested and charged with aggravated domestic assault. B.G. and E.G. were not in the home at the time.

¶ 4. The incident was reported to the Department for Children and Families (DCF), which assigned an investigator. Mother met with the DCF worker the day after the incident. She agreed to enroll the older children, B.G. and E.G., in therapy, and to meet again later to complete a safety plan. Mother subsequently declined to give the DCF worker access to the older children's therapy records, to complete a safety plan, or to allow the worker to interview the older children. She told the DCF worker that there were no safety concerns for the children. The DCF worker

eventually spoke to B.G. and E.G. at the home of their paternal grandmother. The children indicated that they felt unsafe around J.O. and said that mother had told them not to talk to DCF about J.O. E.G. told the investigator that mother forced her to eat hot sauce and that J.O. force-fed her. The petition alleged that mother and J.O. continued to have contact after the May 2021 incident even though J.O.'s criminal conditions of release prohibited contact.[1]

¶ 5. The court transferred custody of the children to DCF in an emergency care order. Following a contested hearing, in October 2021, the court issued a temporary care order continuing DCF custody. B.G. and E.G. were initially placed in the care of their paternal grandmother. In January 2022, the court transferred custody of B.G. and E.G. to their biological father in a conditional custody order. A.O. and I.O. were placed with their paternal grandfather until April 2022, when they were placed back with mother and J.O. under a trial reunification. They continued to live with mother and J.O. at the time of the merits hearing.

¶ 6. In January 2023, after a contested merits hearing, the court issued orders adjudicating all four children as CHINS. In addition to the facts alleged in the CHINS affidavit, the court found that mother had reported to police after the May 2021 incident that J.O. had at various times bloodied mother's nose; punched her in the stomach, possibly causing her to lose a pregnancy; and raped her. Mother was frightened by J.O.'s rages and feared that he would kill her if she sought help. The abuse had gone on for about six months prior to the May 2021 incident. Mother had created a safety plan with a safe word, but when she attempted to implement it during the May 2021 incident, J.O. prevented her from leaving and "domestic violence occurred in the presence of" A.O. and I.O. After the incident, mother stopped cooperating with police or DCF and sought to vacate a relief-from-abuse order that she had obtained and to modify J.O.'s criminal

---

[1] J.O. contests this allegation, and the family court did not appear to rely on it in the merits determination. It is undisputed that J.O.'s conditions were modified several times to allow him to have more contact with mother.

conditions to allow contact with her and the children. The court found that this conduct resembled mother's behavior before the May 2021 incident, when she had been too frightened to report abuse, and that her behavior led to reasonable concerns that the children were being placed at risk. The court found that witnessing domestic violence and being in the same household where such violence occurs harms children. The court found that the children's mental health, welfare, and safety were endangered by the May 2021 incident of domestic violence and by mother's subsequent failure to engage with DCF in safety planning to protect herself and the children from future harm. It concluded that the children were without proper parental care in August 2021 when the petition was filed.

¶ 7. In March 2023, the court issued disposition orders continuing legal custody of A.O. and I.O. with DCF and conditional custody of B.G. and E.G. with their father. Mother appealed all four disposition orders, and J.O. appealed the orders as to A.O. and I.O. This Court consolidated the appeals for argument and decision.

¶ 8. The primary argument raised by both mother and J.O. in these appeals is that the court's findings were insufficient to support its conclusion that the children were CHINS at the time the petition was filed. They also argue that the court applied the wrong legal standard in its merits decision, requiring reversal.

¶ 9. "[T]he focus of a CHINS proceeding is the welfare of the child." In re B.R., 2014 VT 37, ¶ 13, 196 Vt. 304, 97 A.3d 867 (quotation omitted). The State had the burden in this case of proving by a preponderance of the evidence that each child was "without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. § 5102(3)(B). "[I]n evaluating the State's CHINS petition, we focus on the circumstances at the time the State filed the petition." In re M.L., 2018 VT 32, ¶ 16, 207 Vt. 128, 186 A.3d 618. "On review, we will uphold the trial court's findings unless they are clearly erroneous, and the court's

4

legal conclusions will stand when supported by the findings." In re M.M., 2015 VT 122, ¶ 12, 200 Vt. 540, 133 A.3d 379.

¶ 10. We agree with mother and J.O. that the family court initially misstated the applicable legal standard in its merits decision. The court stated that its "task [was] to determine whether the allegations in the petition are true and establish that it was contrary to the children's best interests to return home for any of the reasons set forth in 33 V.S.A. § 5308 at the time of the petition." This was incorrect for several reasons. The court cited the standard for issuing a temporary care order, rather than a merits determination. See 33 V.S.A. § 5308(a) (stating that at temporary care hearing, court shall order child returned to parent's custody unless it finds "that a return home would be contrary to the best interests of the child because" it could endanger child's physical or mental health, welfare, or safety, or there is danger of abuse). This case was at the CHINS merits phase, meaning that the court was required to determine whether the children were without proper parental care necessary for their well-being at the time the petition was filed. Id. § 5102(3)(B). Merely finding that the allegations in the petitions were true would not necessarily satisfy this standard. See In re J.N., 2023 VT 34, ¶ 11, __ Vt. __, 298 A.3d 582 (holding single, essentially undisputed allegation of physical abuse did not support finding that child was CHINS due to neglect). Furthermore, by referring to whether it was in the children's best interests to return home, the court appeared to be focusing on disposition considerations rather than the merits question before it. See In re M.L., 2018 VT 32, ¶ 22 (holding that court's merits determination, which appeared to be motivated by desire to access residential treatment opportunities for child, "focused on the wrong question by jumping ahead to disposition considerations before addressing on its own terms the threshold merits question"). Although the court later cited the applicable CHINS standard, its incorrect recitation of the appropriate legal standard at the outset of the decision calls into question whether it was correctly analyzing the matter before it.

5

¶ 11.   We need not determine whether this error alone would merit reversal, however, because we agree with mother and J.O. that the CHINS merits adjudications are not supported by the court's findings or the evidence presented by the State.

¶ 12.   First, it is important to note that the court did not find that J.O. was violent or threatening toward any of the children or that he directly placed any child in danger.  The State has not identified any evidence in the record that would support such a finding.  There was also no evidence that the children lacked basic necessities, medical care, or education, or that conditions in the home were unsanitary or unsafe for the children.

¶ 13.   The court's decision rested largely on its general and nonspecific finding that witnessing domestic violence harms children.  While common sense might suggest that is true, there was no expert testimony or other direct evidence in the record to support this general finding, and the State does not argue that this is a fact subject to judicial notice.[2]  See V.R.E. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").  While the court may "draw upon its own common sense and experience" in assessing whether a child lacks proper parental care, In re L.M., 2014 VT 17, ¶ 30, 195 Vt. 637, 93 A.3d 553, the court did not make a specific finding that these particular children had been harmed by or were at risk of harm from witnessing the violence J.O. directed at mother.  A.O. and I.O. were in the home during the May 2021 incident, so the court could reasonably infer that they may have seen or heard some of what occurred.  But the court made no findings about the children's proximity to that altercation,

---

    [2]  DCF's own policy manual states that it will not intervene in a family when the sole allegation is that a child has been exposed to domestic violence.  See Dep't for Child. and Families, Family Services Policy Manual 51, 10 (July 10, 2023), https://outside.vermont.gov/dept/DCF/ Shared%20Documents/FSD/Policies/Policy51.pdf [https://perma.cc/NYB4-X3TU].

and parents' testimony on this point was conflicting. The court also made no findings about any impact that witnessing the altercation had on the two younger children. For example, there were no findings, and indeed no evidence presented, to show that A.O. and I.O. suffered emotional harm or displayed behaviors at that time or later that are consistent with trauma resulting from the incident or previous violence. Nor did the court find that A.O. and I.O. had actually witnessed previous incidents of violence. Between the May 2021 incident and the time the petition was filed, there were no further reports of violence between J.O. and mother, in or outside of the presence of the children. Under these circumstances, we cannot uphold the court's finding that the children were at risk of harm from ongoing exposure to domestic violence in August 2021 when the petition was filed.

¶ 14. As for E.G. and B.G., they were not present in the home at the time of the May 2021 incident, and the court did not find that they witnessed any other violence in the home. Treatment of siblings can be relevant to a CHINS determination. E.J.R. v. Young, 162 Vt. 219, 224, 646 A.2d 1284, 1287 (1994). However, because the findings and evidence regarding A.O. and I.O. were insufficient to support a CHINS determination for those children, they could not support a determination for their older siblings.[3]

¶ 15. The State argues that the court appropriately found the children to be CHINS based on the combination of J.O.'s violent behavior and mother's subsequent "backsliding" with respect to the conditions that existed at the time of the May 2021 incident. It argues that after initially cooperating with authorities, mother changed her position, seeking to modify J.O.'s conditions of release to resume contact and declining to take the various actions requested by DCF. The State argues that this case is therefore like In re J.W., 2016 VT 78, 202 Vt. 424, 150 A.3d 190, in which

---

[3] Although the CHINS petition alleged that J.O. had force-fed E.G. and that mother had put hot sauce in E.G.'s mouth, the court did not find these allegations to be proven or that they supported the CHINS determination.

we affirmed a determination that a child was CHINS because his mother believed that his father was dangerous to the child but still sought to expose the child to his father. Id. ¶ 24.

¶ 16. We conclude that In re J.W. is meaningfully distinguishable from the facts of this case. In In re J.W. there was ample evidence of violent acts of the father resulting in direct danger to the child: the father had burned down the mother's home and smashed the mother's car window when she tried to leave with the child. The father had also subsequently left the child unsupervised in the same car, whereupon the child got out of her car seat, climbed out the broken window, and was found wandering alone in a parking lot by a stranger, who called police. Id. ¶ 5. In this case, the only evidence of any danger to the children was that A.O. and I.O. were somewhere in the home during the May 2021 incident. Furthermore, in In re J.W., the mother told authorities that she believed the father was a danger to the child, though she later attempted to retract that statement. Here, mother has consistently maintained her view that J.O. does not pose any threat to the children, including in her report to police immediately after the May 2021 incident.

¶ 17. While it is true that mother declined to complete a safety plan or to allow DCF to interview E.G. and B.G. or access their therapy records, she was not required to do so by a case plan or court order. A parent's reluctance to allow DCF involvement in the family may be relevant to the CHINS determination, but it is not by itself sufficient to support a finding that the children were without proper parental care. Indeed, the fact that mother enrolled the older children in therapy indicates that she was prioritizing their mental health and attempting to remedy any harm. While understandably concerning, the evidence and findings here do not support a determination that the children were at risk of harm because mother failed to protect the children from an individual she believed to be dangerous to them, or that the children lacked proper parental care. We therefore reverse the CHINS merits determination as unsupported by the findings or the record. The merits determination and the related disposition order are vacated.

8

¶ 18. Finally, we address a collateral issue that arose during the proceedings below: the court's order allowing the disclosure of certain records from all four CHINS cases to J.O. and his representative in a substantiation proceeding before the Human Services Board (HSB). We conclude that the order was contrary to law and therefore reverse.

¶ 19. Separately from the CHINS proceeding, J.O. was substantiated by DCF for placing the two younger children, A.O. and I.O., at risk of physical harm during the May 2021 incident, an issue not before us. J.O. filed an administrative appeal to the HSB. In November 2022, DCF filed a motion in each CHINS case to allow dissemination of certain CHINS records to J.O. and his advocate in the HSB appeal because the substantiation decision had relied in part on those records. Parents did not file a response. The court granted the motions, reasoning that because 33 V.S.A. § 5117(b)(1)(H) allows the HSB to inspect juvenile records, parties in an HSB proceeding and their legal representatives should, by extension, be allowed to see the same records. The court explicitly declined to find that J.O. or his representative had a "need to know" about the records, concluding that it did not need to do so because they were entitled to inspect the records under § 5117(b)(1)(H). Mother and J.O. subsequently sought reconsideration, which the trial court denied. They filed an appeal, which this Court dismissed because it sought interlocutory review without permission.

¶ 20. In her appeal from the CHINS merits and disposition orders, mother repeats her claim that the court erred in releasing any juvenile records to J.O.'s legal representative in the HSB proceeding, and in releasing E.G. and B.G.'s records to J.O., without finding that either had a "need to know" under 33 V.S.A. § 5117(b)(1)(F). The State responds that this issue does not affect the merits of the CHINS determination and should be left for resolution in an appeal from the HSB. However, the order was issued in this proceeding, and it involves a pure question of law. See In re D.C., 2016 VT 72, ¶ 6, 202 Vt. 340, 149 A.3d 466 ("Questions of statutory interpretation are

9

pure questions of law that we review de novo." (quotation omitted)). Accordingly, to provide guidance to the family court in future cases, we will address mother's argument here. Cf. Shaddy v. Brattleboro Retreat, 2012 VT 67, ¶ 12 n.3, 192 Vt. 215, 57 A.3d 700 (addressing issue not preserved for appeal because it involved pure question of law and was likely to arise on remand).

¶ 21.    In general, juvenile records are confidential. 33 V.S.A § 5117(a). Section 5117(b) of Title 33 sets forth a list of individuals and entities to whom juvenile records may be disseminated. A person or entity not included within the listed categories may only access juvenile records if they are designated by the family court as a "person who has a need to know." Id. § 5117(b)(1)(F). In In re H.H., 2020 VT 107, ¶ 22, 214 Vt. 1, 251 A.3d 560, this Court held under a previous version of § 5117 that the HSB itself could not inspect juvenile records without a need-to-know designation, even when it was reviewing a child-abuse substantiation. The Legislature subsequently added 33 V.S.A. § 5117(b)(1)(H), which specifically grants access to "the Human Services Board and the Commissioner's Registry Review Unit in processes required under chapter 49 of this title." The trial court in this case reasoned that this provision necessarily extended access to individuals involved in substantiation proceedings before the HSB as well as their advocates.

¶ 22.    The trial court's interpretation is contrary to the statute and our precedent. We interpret a statute to effectuate the intent of the Legislature, beginning with the statute's plain language. In re 204 N. Ave. NOV, 2019 VT 52, ¶ 5, 210 Vt. 572, 218 A.3d 24. "Where that statutory language is clear and unambiguous, we look no further." In re H.H., 2020 VT 107, ¶ 18. Section 5117(b)(1)(H) gives access to juvenile records solely to the HSB and the Registry Review Unit. Notwithstanding the recent amendments, the statute remains silent with regard to individuals who are the subject of HSB proceedings or their representatives. Because J.O. was not a party to the cases concerning B.G. and E.G., the only way the court could have granted him access to those

records was by designating him as a person with a need to know under § 5117(b)(1)(F).[4]  See In re H.H., 2020 VT 107, ¶ 18 (holding, under prior version of statute, that HSB could inspect family court records only pursuant to need-to-know designation under § 5117(b)(1)(F)).  Similarly, because J.O.'s advocate in the HSB appeal was not his attorney in the CHINS proceedings, he should not have been allowed to inspect any of the children's records without a need-to-know designation.  We therefore reverse the court's orders permitting access to J.O. and his advocate under § 5117(b)(1)(H) and order the return of the records.

Reversed.

FOR THE COURT:

_____
Chief Justice

---

[4]  The statute permits J.O. to have access to the records concerning his own children, A.O. and I.O., because he is a party in their cases.  See 33 V.S.A. § 5117(b)(1)(D).