VERMONT SUPREME COURT

109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case Nos.    24-AP-262 &
25-AP-077



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2025

In re Appeal of A.N.\*

}  APPEALED FROM:
}  Human Services Board
}  CASE NO. M-11/23-956

In the above-entitled cause, the Clerk will enter:

Petitioner appeals pro se from a Human Services Board decision that upheld petitioner's substantiation for physically abusing her daughter J.N.  We affirm.

## I.  Overview

We begin with an overview of the substantiation process.  The Department for Children and Families (DCF) assesses and investigates reports of child abuse and neglect and maintains a confidential registry of individuals "substantiated" for abuse or neglect.  33 V.S.A. §§ 4915(a), 4915b, 4912(16).  The registry serves "to safeguard children by allowing certain individuals working in fields involving contact with children to access a list of persons substantiated for child abuse or neglect."  In re H.H., 2020 VT 107, ¶ 8, 214 Vt. 1.

"A report is 'substantiated' where DCF determines, following an investigation, that it 'is based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected.' "  Id. (quoting 33 V.S.A. § 4912(16)).  An "[a]bused or neglected child" includes "a child whose physical health . . . or welfare is harmed . . . by the acts or omissions of his or her parent."  33 V.S.A. § 4912(1).  "Harm" can occur through "physical injury," which is in turn defined as "death or permanent or temporary disfigurement or impairment of any bodily organ or function by other than accidental means."  Id. § 4912(6)(A), (11).  DCF Rules similarly define "physical abuse" to mean "the infliction of physical injury or serious physical injury by a person responsible for the child's welfare, including with death resulting."  Response to Child Abuse and Neglect Rules, § 2001(14), Code of Vt. Rules 13 172 200.

Individuals substantiated by DCF for abuse or neglect can seek Board review.  33 V.S.A. §§ 4916a, 4916b.  The Board reviews DCF's substantiation finding de novo, and DCF bears the burden of "justify[ing] its substantiation decision" by a preponderance of the evidence.  In re R.H., 2010 VT 95, ¶¶ 16-17, 189 Vt. 15; Fair Hearing Rules, § 1003(O)(4), Code of Vt. Rules 13 020 002.

## II. Merits

DCF substantiated petitioner in September 2021 for physically abusing J.N. After a hearing, the Board upheld the substantiation. The Board made the following findings. The substantiation was based on an allegation that in early August 2021, petitioner grabbed J.N. by the arm and dragged her up a set of concrete stairs, scratching J.N.'s arms and causing red marks on her knees. This incident also led to the filing of a petition alleging that J.N. was a child in need of care or supervision (CHINS) based on parental neglect. See 33 V.S.A. § 5102(3)(B). J.N. was seven years old at the time of the incident and living with petitioner. J.N. received services from a community mental-health center to help her develop self-regulation and social skills.

Petitioner and J.N. lived in an apartment complex accessed by a long concrete pathway. The pathway ran from the parking area to concrete steps with a steel railing and handrail, which led to petitioner's apartment. On the day of the incident, J.N. expected to attend a field trip with her summer camp. Due to her behavior at camp, however, it was determined that she would engage in alternative camp programming instead. That decision was conveyed to petitioner but not J.N.

On the morning in question, two behavioral interventionists arrived at petitioner's home to take J.N. to camp. One interventionist remained in the car. J.N.'s primary interventionist, who worked consistently with J.N. and petitioner, entered the apartment to inform J.N. of the change in plans and to take her to the car. Shortly thereafter, J.N. exited the apartment and ran down the stairs, followed by petitioner and the primary interventionist. J.N. ran to the car but did not get in. J.N. was screaming and crying, stating that she did not want to go back with petitioner and that petitioner was going to beat her. J.N. was shaking, breathing heavily, and visibly upset and scared. Petitioner appeared upset. She was yelling at J.N., telling her not to get into the car and to return to the house. Petitioner had an angry demeanor and her tone was stern.

Petitioner caught up to J.N. at the car, which was about 150 feet from the apartment. She grabbed J.N. by the arm and shirt, and yanked on J.N.'s arm, pulling her along the concrete path and stairs towards the apartment. J.N. actively resisted, finally grabbing the railings on the steps. J.N. was on her side on the ground on the steps as petitioner continued to yank her arm to move her towards the apartment. J.N. gripped the steel railing with one arm, preventing petitioner from pulling her up the stairs. Petitioner yelled that she would call the police and left J.N. on the stairs crying. J.N. ran back to the car crying and appeared scared. She got into the car and asked in a shaky voice to go to the interventionist's home. Petitioner yelled to J.N. that she would not have a birthday party and told the interventionists not to leave with J.N. J.N. continued to cry in the car. The interventionists contacted their supervisor who spoke with petitioner on the telephone; petitioner eventually calmed down.

A police officer responded to the scene and spoke with petitioner. Petitioner ultimately allowed the interventionists to leave with J.N. for her alternative programming. J.N. immediately calmed down when she left the apartment complex. She was subsequently transported to the local community mental health center, where she was examined by a nurse. The interventionist observed that J.N. had scratches, scrapes and bruising on her arm and knee. The interventionist reported the incident to DCF.

A DCF investigator spoke with petitioner and implemented a safety plan. The investigator interviewed petitioner in her home. Two of petitioners' neighbors were present during the interview and they later testified at the hearing. Petitioner indicated that J.N. could be

2

difficult to manage and that she was trying to bring J.N. back into the apartment; petitioner asserted that the bruises on J.N. were old.

The investigator also spoke with J.N. and the primary interventionist was present during the interview. J.N. was afraid to talk about the incident but indicated that the incident made her feel scared and sad. J.N. said that petitioner threatened to take her to DCF when she wasn't behaving or listening. J.N. described being dragged up the concrete stairs by petitioner and holding tightly to the railing while petitioner yanked her up. The investigator observed that the bruises seen on J.N. after the incident were still present five days later. J.N. confirmed that petitioner caused the bruising during the incident. The investigator also reviewed multiple video recordings depicting segments or snippets of the physical altercation; these recordings were admitted as exhibits at the hearing and described by the Board in its decision.

The Board recounted petitioner's version of events, including her assertion that she was trying to keep J.N. safe. It did not credit the testimony of petitioner's witnesses, who stated— contrary to petitioner's own testimony—that petitioner did not grab or put her hands on J.N.

The Board concluded that J.N.'s injuries were consistent with being dragged on the concrete path and stairs during the incident. It found petitioner's actions driven by anger rather than thoughtful consideration. Her stern tone and demeanor, along with the forceful way in which she grabbed and yanked J.N., indicated that petitioner's behavior was a reaction to her own exasperation rather than a measured response to the situation, all of which led to an escalated and aggressive interaction with J.N.

The Board found no reasonable dispute that the allegations against petitioner, if proven, would constitute physical abuse under applicable laws and related rules. Petitioner was alleged to have yanked and dragged J.N. on concrete, causing obvious injuries, pain and emotional distress. Given the documented physical injuries, including fingerprint-like bruises on J.N.'s arm and a fresh scrape on her knee, along with corroborating witness accounts, including petitioner's own testimony, it held that the evidence clearly substantiated a conclusion of physical abuse by a preponderance of the evidence. The bruises on J.N.'s arm suggested a forceful grip, while the scrape on her knee was consistent with being dragged along the concrete path and stairs. J.N.'s instinct to flee to the interventionist's car—a place she perceived as safe—further contradicted petitioner's claim that her actions were motivated by concerns for J.N.'s well-being. Petitioner's visible anger throughout the encounter not only escalated the situation but also heightened J.N.'s fear and distress. Despite J.N.'s repeated cries of "no" and her attempts to resist, petitioner continued to exert physical force, dragging J.N. back to their home. The Board found that this conduct did not reflect an attempt to protect J.N.'s safety but rather demonstrated an aggressive response to the situation. The evidence, therefore, underscored the excessive nature of petitioner's response to the incident and supported DCF's decision to substantiate petitioner for physical abuse.

During the hearing before the Board, petitioner sought to introduce evidence from a DCF witness regarding a decision by this Court in the child-protection case involving J.N. The case stemmed from the same incident that formed the basis of the substantiation. See In re J.N., 2023 VT 34, 218 Vt. 137. In that case, the State alleged that J.N. was CHINS based on a lack of proper parental care, referred to as a "CHINS-B" petition. The petition was based on an "incident during which [petitioner] . . . dragged J.N. by her arms, causing bruises." Id. ¶ 2. Petitioner argued that the State was improperly using "a CHINS-B petition to advance a claim of abuse, and . . . by accepting this framing, the [trial] court deprived her of notice and interpreted the statute in a manner that was unconstitutionally overbroad." Id. ¶ 8. We reversed the CHINS-

3

B determination, holding that the trial court's "reasoning . . . was effectively an abuse analysis," which "stretche[d] the CHINS-B definition too far." Id. ¶ 11. We held that "[t]he single incident of physical discipline in this case d[id] not support the conclusion that J.N. was lacking care necessary for her well-being as required to support a neglect finding," and reversed the CHINS determination because the trial court's "findings . . . [did] not fit the theory charged by the State." Id. ¶¶ 11, 16.

In denying petitioner's request to elicit testimony about this decision at the hearing, the Board emphasized that the case turned solely on this Court's determination that the trial court's factual findings did not support its legal conclusion that J.N. was without proper parental care necessary for her well-being. The Board considered this determination irrelevant to the substantiation on appeal, which was premised on physical abuse, not neglect. For the same reason, the Board also rejected petitioner's request to introduce a videorecording and transcript of the closing argument in her Supreme Court case.

### III. Motion to Reopen

After appealing the Board's substantiation decision, petitioner moved to reopen the proceedings before the Board. She argued that the Board improperly rejected her efforts to introduce evidence about the CHINS decision, which she asserted precluded her substantiation here. The Board denied the motion, finding that petitioner failed to establish good cause for reopening the appeal. It found that petitioner's appeal was properly decided under Board rules and that claim preclusion did not apply because a substantiation for physical abuse could not have been litigated as part of the CHINS-B proceeding. Petitioner appealed and the two appeals were consolidated for our review.

### IV. Arguments on Appeal

On appeal, petitioner argues that the Board should have credited her version of events. She asserts that the CHINS decision referenced above was relevant and that it precludes DCF from substantiating her for physically abusing J.N. Petitioner appears to rely on both the doctrine of claim preclusion and issue preclusion, although it is not apparent that she preserved the latter argument at the hearing below. Petitioner further suggests that DCF failed to prove that she intended to harm J.N. or that J.N. was disfigured or injured by petitioner's conduct. Finally, petitioner argues that the Boad should have granted her motion to reopen to allow her to pursue her preclusion argument.

We review the Board's substantiation decision regarding for abuse of discretion. In re R.H., 2010 VT 95, ¶ 21. "We are limited to deciding whether the Board applied the proper legal standard, whether the evidence before the Board reasonably supports its findings, and whether the Board's findings reasonably support its conclusions." In re S.C.-M., 2025 VT 48, ¶ 23 (quotation omitted). We review de novo decisions regarding issue preclusion and claim preclusion. In re H.H., 2020 VT 107, ¶ 15; Shaddy v. Brattleboro Retreat, 2012 VT 67, ¶ 9, 192 Vt. 215.

We reject petitioner's arguments. We begin with her claim-preclusion argument, which was the implicit reason behind her attempt to admit evidence of the juvenile proceeding during the hearing and which formed the basis of her motion to reopen.

As we have explained:

4

Under the doctrine of claim preclusion, a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical. The doctrine applies both to claims that were or should have been litigated in the prior proceeding. Claim preclusion flows from the fundamental precept that a final judgment on the merits puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.

Faulkner v. Caledonia Cnty. Fair Ass'n, 2004 VT 123, ¶ 8, 178 Vt. 51 (citation and quotation omitted).

As the Board explained, and as this Court has recognized, a CHINS petition is distinct from a substantiation decision and the "cause[] of action in both matters" is not "the same or substantially identical." Id. Substantiations are governed by Chapter 49 of Title 33, and they have "legislative goals, functions, and procedures completely different from those" governing juvenile proceedings under Chapter 51 of Title 33. In re M.E., 2010 VT 105, ¶ 13, 189 Vt. 114 (quotation omitted). DCF could not have attempted to substantiate petitioner for physical abuse in the CHINS proceeding. The Board did not err in excluding evidence about the CHINS decision during the hearing as irrelevant and denying her motion to reopen.

Assuming arguendo that petitioner also preserved an issue-preclusion argument, we reject that argument as well. Issue preclusion, or "collateral estoppel, may preclude relitigation, in a subsequent substantiation proceeding, of issues necessarily and essentially determined in an earlier CHINS adjudication." In re H.H., 2020 VT 107, ¶ 23 (quotation omitted). The following five elements must be satisfied:

(1) preclusion is asserted against one who was a party . . . in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

Id. (alteration in original) (quotation omitted).

The issue in the juvenile proceeding—whether J.N. was without proper parental care necessary for her well-being—was not the same as the question before the Board. The former petition was based on an allegation of parental neglect and we determined that the trial court's findings did not support a determination of neglect. The instant proceeding, by contrast, asked whether petitioner should be substantiated for physically abusing J.N. This issue was not "resolved by a final judgment on the merits" and the issues are not the same. The Board did not suggest otherwise in denying petitioner's motion to reopen, as petitioner appears to contend. While the substantiation and CHINS proceedings both arose from the same incident, "the ultimate factual and legal questions presented are distinct." In re H.H., 2020 VT 107, ¶ 31. The CHINS decision is not entitled to preclusive effect here.

With respect to the merits, petitioner fails to show that the Board abused its discretion in upholding DCF's substantiation. She challenges the Board's assessment of the weight of the evidence and the credibility of witnesses, both of which fall within the exclusive province of the factfinder. See, e.g., Mullin v. Phelps, 162 Vt. 250, 261 (1994) (explaining that in reviewing

findings of fact, Supreme Court does not reweigh evidence or make findings of credibility de novo). The Board found that petitioner acted out of anger—not out of concern for J.N.'s wellbeing—and that she yanked and dragged J.N. on concrete, causing pain and physical injuries to J.N., including fingerprint-like bruises on J.N.'s arm and a scrape on her knee. The Board's findings are supported by the evidence and they support its conclusion that petitioner should be substantiated for physically abusing J.N. under the applicable statutory definitions and consistent with DCF rules. Petitioner's citation of definitions from a federal law concerning war crimes has no bearing on this case. Her disagreement with the Board's conclusion does not demonstrate an abuse of discretion. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (mem.) (explaining that arguments which amount to nothing more than a disagreement with court's reasoning and conclusion do not make out a case for an abuse of discretion). We have considered all of petitioner's arguments and discern no error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice

6